UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21598-CIV-HUCK/SIMONTON

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited liability company, *et al.*,
    Defendants.
_____/
MSA ARCHITECTS, INC, a Florida corporation,
    Defendant/Cross-claimant,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited liability company, *et al.*,
    Defendants/Cross-defendants.
_____/
MSA ARCHITECTS, INC, a Florida corporation,
    Defendant/Cross-claimant/Third Party Plaintiff,
vs.

NAGELBUSH MECHANICAL, INC., a Florida corporation, *et al.*,
    Third Party Defendants.
_____/

### OMNIBUS ORDER ON THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS MSA ARCHITECTS, INC.'S FIRST AMENDED THIRD PARTY COMPLAINT

This cause is before the Court on the following Motions:

1. Coastal Masonry's Motion to Dismiss MSA Architects, Inc.'s ("MSA") First Amended Third Party Complaint, filed November 9, 2006 (DE# 177);

2. Delta Painting's Motion to Dismiss Count VII of MSA's Amended Third Party Complaint, filed November 16, 2006 (DE# 196);

1

3. Metro Caulking's Motion Dismiss Count II, XIII and XXIV of MSA's First Amended Third Party Complaint, filed November 21, 2006 (DE# 208);

4. Master Plaster's Motion to Dismiss MSA's First Amended Third Party Complaint, filed November 22, 2006, as Supplemented on December 7, 2006 DE## 220, 268);

5. Nagelbush's Motion to Dismiss MSA's First Amended Third Party Complaint, filed November 28, 2006 (DE# 225);

6. Gamma USA's Amended Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 1, 2006 (DE # 239);

7. Daniel Electric Contractors' Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 1, 2006 (DE# 241); and

8. Fred MacGilvray's Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 8, 2006 (DE# 275).

The Court has reviewed the foregoing Motions, MSA's Responses thereto and the Third Party Defendants' briefs in further support thereof. Additionally, the Court heard oral argument on the Motions at a hearing held on December 21, 2006. The court is duly advised in the premises.

The Motions to Dismiss relate to MSA's First Amended Third Party Complaint. In the Third Party Complaint, MSA asserts claims against each of eleven subcontractors of Defendant The Weitz Company, LLC ("Weitz LLC"), for indemnification (Counts I through XI), breach of contract (Counts XII through XXII), and contribution (Counts XXIII through XXXIII). With only minor exceptions, the Third Party Defendant subcontractors have moved to dismiss MSA's Third Party Complaint on substantially the same grounds.

**COUNTS I through XI - CONTRACTUAL INDEMNIFICATION**

In Counts I through XI, MSA has sued the Third Party Defendant subcontractors for indemnification pursuant to the terms of the Agreement Between Owner [CC-Aventura, Inc.] and Contractor [Weitz LLC] (hereinafter referred to as the "Prime Contract"), which is incorporated by reference in each of the subcontractors' standard subcontracts with Weitz LLC. The subcontractors make several arguments for dismissal of Counts I through XI, chief among them are their arguments based on the language of two different versions of §725.06, Florida Statutes.[1] That section places limitations on the form and scope of contractual indemnification in construction contracts. Between July 1, 2000 and June 30, 2001, section 725.06 provided that only the "part[ies]" to a contract could indemnify or be indemnified by each other. Subcontractors which entered into their subcontracts with Weitz LLC prior to July 1, 2001, argue the statute renders void the indemnity provisions invoked by MSA because MSA was neither a "party" to the subcontractor's contract with Weitz LLC or to the Prime Contract between Weitz LLC and CC-Aventura, Inc. The second group of subcontractors, i.e., those who entered into their subcontracts with Weitz LLC on or after July 1, 2001, argue that the indemnity provision in their subcontracts are unenforceable because that provision is not limited monetarily, as required by the post-July 2001 version of §725.06. The Court considers each argument in turn.

The version of §725.06, Florida Statutes, in effect between July 1, 2000 and June 30, 2001

---

[1]Section 725.06, Florida Statutes, was amended during the period of time in which the Third Party Defendant subcontractors entered into their respective subcontracts with Weitz LLC. Some of the subcontractors entered into their subcontracts prior to the date on which the amendment went into effect (July 1, 2001) and some of the subcontractors entered into their subcontracts after the amendment took effect.

provided as follows:

> (1) A construction contract may require a party to that contract to indemnify and hold harmless the other party to the contract, their officers and employees, from liabilities, damages, losses and costs, including, but not limited to, reasonable attorney's fees, to the extent caused by the negligence, recklessness, or intentional wrongful misconduct of the indemnifying party and persons employed or utilized by the indemnifying party in the performance of the construction contract.
>
> (2) Except as specifically provided in subsection (1), a construction contract may not require one party to indemnify the other party, its employees, officers, directors, or agents from any liability, damage, loss, claim, action, or proceeding, and any such contract provision is void as against public policy of this state.

Subcontractors which entered into their subcontracts with Weitz LLC during the effective period of the foregoing version of §725.06 argue that because MSA is not a "party" to the subcontractors' agreements with Weitz LLC or to the Prime Contract, the provisions in the agreements granting indemnification in favor of MSA, a third party, are void as against the public policy of Florida. In response, MSA argues that it is a *third party beneficiary* of the indemnity provisions at issue and that the term "party to a contract", as used in §725.06, includes an intended third party beneficiary.

Under Florida law, it is well settled that where the language of a statute is clear and unambiguous, and conveys a clear and definite meaning, it needs no interpretation or construction and is itself an expression of the legislature's intent. *See Osborne v. Simpson*, 94 Fla. 793, 795-96 (1927)(citing *Fine v. Moran*, 74 Fla. 417 (1917)); *M.W. v. Davis*, 756 So.2d 90, 101 (Fla. 2000). "Ambiguity" exists where reasonable persons can find different meaning in the same language. *See Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So.2d 452, 455 (Fla. 1992). Here, the parties agree that the 2000-2001 version of §725.06 expressly allowed only a "party" to a contract to indemnify or be indemnified pursuant to the contract. MSA, however, argues that the term "party" includes a third party beneficiary. The Court disagrees with MSA's overly broad definition.

While the statute itself provides no definition for the word "party," there is ample authority establishing that the term does not include a third party beneficiary. The reported cases discussing third party beneficiary status uniformly draw a distinction between "parties to a contract" and "third party beneficiaries." *See, e.g., Weimer v. Yacht Club Point Estates, Inc.*, 223 So.2d 100, 102 (Fla 4th DCA 1969)("Florida has long recognized the propriety of a third party beneficiary who is not a party to a contract suing for damages as a result of the acts of one of the parties to the contract"); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So.2d 1028, 1030-1031 (Fla. 4th DCA 1994)("[The exception to the rule that only a party to a contract may sue another party to the contract for breach ] is where the entity that is not a party to the contract is an intended third party beneficiary . . ."). Even a case upon which MSA relies in its briefs reflects the distinction between a third party beneficiary and a party to the contract. *See Jenne v. Church & Tower, Inc.*, 814 So.2d 522, 524 (stating that the test to determine whether a third person is a third party beneficiary is whether "the parties to the contract intended that [the] third person [benefit from the contract]"). Lest there be any doubt, the Court has also referred to an authoritative dictionary, as is appropriate, to ascertain the meaning which the legislature ascribed to the word "party." *See L.B. v. State*, 700 So.2d 370, 372 (Fla. 1997)(noting that courts may refer to a dictionary). The Eighth Edition of Black's Law Dictionary defines a "third party beneficiary" as "a person who, though not a party to a contract, stands to benefit from the contract's performance."

In short, a third party beneficiary is *not* a party to a contract. Therefore, the language of the 2000-2001 version of §725.06 is clear and unambiguous. It declares void contractual indemnity provisions covering third parties – even if the third party is an expressly intended beneficiary of the

contract.[2] Because MSA was not a party to the subcontractors' subcontracts with Weitz LLC or Weitz LLC's Prime Contract with CC-Aventura, the indemnification clause in either contract is void as against public policy to the extent it attempts to indemnify MSA. Accordingly, the Motions to Dismiss Counts I through XI filed by those subcontractors who entered into their subcontracts prior to July 1, 2001 is granted.

Subcontractors which entered into their subcontracts with Weitz LLC on or after July 1, 2001 argue that the indemnity provisions invoked by MSA are invalid and unenforceable because the provisions are not limited monetarily as required by the current version of §725.06. That version does not limit contractual indemnity to the "parties" to a contract, but does provide that indemnification provisions in construction contracts are "void and unenforceable unless the contract contains a monetary limitation on the extent of the indemnification that bears a reasonable commercial relationship to the contract and is part of the project specifications or bid documents, if any." The post-July 1, 2001 subcontractors argue that because the indemnification provision set forth in each of their the subcontracts has no monetary limit, §725.06 mandates that MSA's claims for contractual indemnity be dismissed.

MSA acknowledges that the indemnification provision at §7.5 of Exhibit "C" to the standard subcontract is defective because it lacks a monetary limit, but argues that §7.5 is not the operative indemnification provision. Instead, MSA argues that the indemnification provision set forth in §6 of

---

[2] Further evidence of the legislature's intent to limit the pre-July 1, 2001 version of the statute to limit indemnity in construction contracts to the "parties" to such contracts is the fact that the subsequent version of the statute replaced the limitation on *who* could properly indemnify or be indemnified with one instead based on the *amount* of potential indemnification liability – without regard to who is granting or benefitting from the indemnity.

the Prime Contract between Weitz LLC and CC-Aventura applies and is incorporated into each subcontract. Unlike the unlimited indemnification provision in the standard subcontracts, the indemnification provision in §6 of the Construction Contract contains a limit on the amount of potential indemnification. That amount, $50 million dollars, is the total amount ascribed to Weitz LLC's potential indemnification liability. As discussed further below, however, MSA's argument fails for two reasons. First, although the Prime Contract between Weitz LLC and CC-Aventura is incorporated by reference in the standard subcontracts, the indemnity provision at §7.5 of the subcontracts takes priority over the corresponding provision in the Prime Contract. Section 7.5 is not limited as required by the statute and is, therefore, void. Second, even if the indemnity provision in §6 of the prime Construction Contract *were* the operative indemnity provision, that provision would still be void as to the subcontractors because it only limits the Contractor, Weitz LLC's potential liability – not that of the subcontractors.

Pursuant to §1.9 of Exhibit "C" to the Standard Form of Subcontract, each subcontractor's agreement with Weitz LLC is embodied by the "Subcontract Documents." These are identified as (i) any Modifications to the Standard Form Subcontract Agreement; (ii) the Subcontract Agreement itself and the Exhibits thereto; (iii) the subcontractor's payment and performance bonds; and (iv) the prime Construction Contract between Weitz LLC and CC-Aventura. Section 1.9 provides that "[i]n the event of any conflicts in the Subcontract Documents, the provisions shall govern in priority in the order listed [above]; provided, that notwithstanding the foregoing, if the Prime Contract requires stricter performance or requirements than the remaining Subcontract Documents, the Subcontractor shall provide the stricter performance or requirements." The foregoing language makes clear that the standard subcontract takes priority over the Prime Contract in the event of a conflict between the

documents. The Court finds that the two indemnity provisions at issue conflict because the provision in the subcontracts creates the potential for unlimited liability while the provision in the Prime Contract creates only the potential for limited liability. The proviso in section §1.9 dictates that, in the event of such a conflict, if the Prime Contract requires stricter performance or requirements than the subcontract, the subcontractor is required to provide such stricter performance or requirements. Here, the unlimited indemnity provision in the standard subcontract would impose a stricter requirements upon the subcontractor than would the arguably limited provision in the Prime Contract (as discussed below, however, the indemnity provision in the Prime Contract is not limited with respect to the subcontractors). Thus, there is no basis for holding the subcontractors to the indemnity provision in Weitz LLC's Prime Contract with CC-Aventura. The subcontractors are bound by a stricter indemnity provision in their own subcontracts, which takes priority over the corresponding provision in the Prime Contract.

      Even if the indemnity provision in the Prime Contract *were* the operative provision governing the subcontractors' indemnity obligations with respect to MSA, that provision would also be void as to the subcontractors. The provision in the Prime Contract is not limited with respect to the subcontractors, but rather limited with respect to the Contractor, Weitz LLC. The last paragraph of §6 provides that "the liability of the *Contractor* set forth in this paragraph 6 shall not exceed FIFTY MILLION DOLLARS ($50,000,000.00)." The provision places no such limitation on the liability of any of the subcontractors. With regard to MSA's argument that the $50 million dollar limit applicable to Weitz LLC also applies to each subcontractor, the Court notes that under §725.06, the limit placed upon a party's potential indemnification liability must bear a "reasonable commercial relationship to the contract." Without assessing the reasonableness of a $50 million dollar limit with

respect to Wetiz LLC or any particular subcontractor, the Court notes that it is unlikely that the parties intended to expose all eleven subcontractors to the same potential indemnification liability borne by the general contractor. This is evident from the Prime Contract and the various subcontracts which clearly reflect that the scope of each subcontractor's work and responsibility varied greatly and each was only a fraction of the overall construction for which Weitz LLC was responsible to the owner, CC-Aventura. [3] Accordingly, the Court finds that because neither of the contractual indemnity provisions at issue places a monetary limit on the amount of the subcontractors' potential liability, the provisions are void as to the subcontractors under the post-July 1, 2001 version of §725.06, Florida Statutes. Therefore, the subcontractors' Motions to Dismiss Counts I through XI are GRANTED and those Counts are DISMISSED with prejudice.

**COUNTS XII through XXII – BREACH OF CONTRACT**

In Counts XII through XXII, MSA sues the Third Party Defendant subcontractors for breach of contract, based on the subcontractors' alleged failure to obtain adequate insurance coverage for MSA. The subcontractors mainly take issue with the propriety of such a claim in a third party action. Rule 14, Federal Rules of Civil Procedure, provides that a Defendant may, as a third party plaintiff, implead a third party into a lawsuit if the third party "is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." Impleader may only be used when the third party defendant's potential liability is "dependent upon the outcome of the main claim" by the original plaintiff against the defendant/third party plaintiff. *See Southeast Mortg. Co. v. Mullins*,

---

[3] It is also evident from the fact that the subcontractors were required by their subcontracts to obtain only a fraction of the insurance coverage required of Weitz LLC pursuant to the Prime Contract. *Compare* §§ 1 and 2 (as applicable) in Exhibit "A" to the Standard Subcontracts to § 7 of the Prime Contract.

514 F.2d 747 (5th DCA 1975). Conversely stated, an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it arises out of the same general set of facts as the main claim. *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5 th DCA 1967).

Whether impleader is appropriate depends on whether the third party's liability is derivative of the outcome of the main claim. *Id*. The third party defendant must be "liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff." *Id*. While it is certainly the case that MSA's counts against the Third Party Defendant subcontractors for indemnity and contribution are derivative of the outcome of Plaintiffs CC-Aventura and Classic Residence Management's main claims against MSA, the same is not true of MSA's breach of contract claims against the subcontractors. Whether the subcontractors breached their contractual obligation to name MSA as an additional insured party does not depend upon whether MSA is liable to the original Plaintiffs, CC-Aventura and Classic Residence Management. The subcontractors could be liable to MSA for breach of contract regardless of the outcome of the main claim. Therefore, impleader under Rule 14 is inappropriate with respect to MSA's breach of contract claims against subcontractors. Accordingly, the subcontractors' Motions to Dismiss Counts XII through XXII are GRANTED and those Counts are DISMISSED without prejudice to file those claims in a separate action.

### COUNTS XXIII through XXXIII – CONTRIBUTION

In Counts XXIII through XXXIII, MSA seeks contribution from the Third Party Defendant subcontractors pursuant to §768.31, Florida Statutes. That section provides that "when two or more persons become jointly or severally liable in tort for the same injury to person or property, . . . there is a right of contribution among them even though judgment has not been recovered against all or any

of them." The Third Party Defendant subcontractors move to dismiss MSA's claim for contribution because MSA and the subcontractors are not alleged (in CC-Aventura or Classic Residence Management's Complaint against MSA) to be "joint tortfeasors." Rather, CC-Aventura is suing MSA for its allegedly flawed architectural designs and defective inspection. Because the subcontractors are not alleged to have undertaken any of the defective design or inspection work and because the Agreement between Owner and Architect (the "Architecture Contract") expressly shields MSA from liability for the work performed by subcontractors, the subcontractors argue that they cannot possibly be joint tortfeasors with MSA. MSA responds by noting that it is not only being sued for breach of the Architecture Contract (under which it may be shielded from liability), but also for the tort of professional negligence and for building code violations pursuant to §553.84, Florida Statutes. MSA argues that the Architecture Contract provides it no protection from such extra-contractual liability and that it may share that liability with the subcontractors.

In support of their Motions to Dismiss MSA's claim for contribution, the subcontractors rely on the case of *Touche Ross & Co. v. Sun Bank of Riverside*, 366 So.2d 465 (Fla. 3d DCA 1979). There, Florida's Third District Court of Appeal held that an accounting company, which had been sued by a hospital for its failure to discover the hospital CEO's fraud, could not maintain a third party action for contribution against the banks which honored the CEO's bad checks. The court reasoned that the accounting company and the banks were not exposed to liability to the hospital under the same set of circumstances, nor did the accounting company and the banks share a common burden. *Id*., at 467. The court noted that the duty and conduct of the banks in their relationship to the hospital was totally separate and apart in time and substance from that owed to the hospital by the accounting firm. *Id*.

While it is certainly true that MSA and the subcontractors here owed different duties toward the Plaintiffs, the Court finds that such differences were not "totally separate and apart in time and substance", as in *Touche Ross*. This case is far more similar to the case relied upon primarily by MSA, *Salley v. Charles R. Perry Construction, Inc.*, 403 So.2d 556 (Fla. 1st DCA 1981). In *Salley*, an architect and his associates had their crossclaim for contribution pursuant to §768.31, Florida Statutes, dismissed because, in the trial court's opinion, there was no showing of common liability between an architect and a contractor. On appeal, Florida's First District Court of Appeal held that common liability, and therefore a right to contribution, existed because the contractor and the architect were engaged in the common enterprise of designing and constructing a building with duties to an owner that were intertwined in both time and substance. *Id.* at 557. MSA has alleged that, along with the subcontractors, it was engaged in the common enterprise of building the Classic Residence by Marriot for owner, CC-Aventura.  As in *Salley*, the Architecture Contract and the Subcontract Documents (as defined above) here reflect that the MSA and subcontractors' duties to CC-Aventura were closely related, given the nature of a construction project. *Id.* at 558. Accordingly, MSA has made a showing of common liability necessary to maintain its claim for contribution. Therefore, the subcontractors' Motions to Dismiss, as they relate to Counts XXIII through XXXIII of MSA's First Amended Third Party Complaint are DENIED.

It is hereby ORDERED and ADJUDGED that the following Motions are GRANTED in part and DENIED in part as set forth above:

1. Coastal Masonry's Motion to Dismiss MSA Architects, Inc.'s ("MSA") First Amended Third Party Complaint, filed November 9, 2006 (DE# 177);

2. Delta Painting's Motion to Dismiss Count VII of MSA's Amended Third Party

      Complaint, filed November 16, 2006 (DE# 196);

3. Metro Caulking's Motion Dismiss Count II, XIII and XXIV of MSA's First Amended Third Party Complaint, filed November 21, 2006 (DE# 208);

4. Master Plaster's Motion to Dismiss MSA's First Amended Third Party Complaint, filed November 22, 2006, as Supplemented on December 7, 2006 DE## 220, 268);

5. Nagelbush's Motion to Dismiss MSA's First Amended Third Party Complaint, filed November 28, 2006 (DE# 225);

6. Gamma USA's Amended Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 1, 2006 (DE # 239);

7. Daniel Electric Contractors' Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 1, 2006 (DE# 241); and

8. Fred MacGilvray's Motion to Dismiss MSA's First Amended Third Party Complaint, filed December 8, 2006 (DE# 275).

DONE and ORDERED in Chambers, Miami, Florida this 10th day of January, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record.