UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  06-21598-CIV-HUCK/SIMONTON

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
	Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited liability company, *et al.*,
	Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## OMNIBUS ORDER ON THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS MSA ARCHITECTS, INC.'S SECOND AMENDED COMPLAINT

This matter is before the Court on the following Motions:

(1) Coastal Masonry's Motion to Dismiss Count VIII of the Second Amended Complaint of MSA Architects, Inc., filed March 7, 2007 [DE #492];

(2) Gamma USA, Inc.'s Motion to Dismiss Count IV of MSA Architects, Inc.'s Second Amended Third Party Complaint as Against Gamma USA, Inc.; filed March 8, 2007 [DE #499];

(3) Nagelbush Mechanical, Inc.'s Motion to Dismiss Count I of MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 8, 2007 [DE #501];

(4) Motion of Concrete & Lumber Enterprises Corp. to Dismiss the Second Amended Third Party Complaint of MSA Architects, Inc., filed March 8, 2007 [DE #502];

(5) Master Plaster, Inc.'s Motion to Dismiss Count III of MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 8, 2007 [DE #504];

(6) Motion of Concrete & Lumber Enterprises Corporation to Dismiss Count X of the Second Amended Third Party Complaint of MSA Architects, Inc. for Failure to State a Claim Cognizable Under F.R.C.P. 14, filed March 9, 2007 [DE #507]; and

(7) Fred McGilvray, Inc.'s Motion to Dismiss MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 15, 2007 [DE #516].

1

The Court has considered each of the foregoing Motions, MSA Architects, Inc.'s ("MSA") Responses thereto and the individual Third Party Defendants' Replies in further support thereof. The Court is duly advised in the premises.

## STANDARD ON A MOTION TO DISMISS

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. Id. at 47. All that is required is a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff, and accept the plaintiff's well-pleaded facts as true. *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974); *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993).

## MSA'S BREACH OF WARRANTY CLAIMS AGAINST THE THIRD PARTY DEFENDANTS ARE APPROPRIATE UNDER RULE 14, FEDERAL RULES OF CIVIL PROCEDURE

Most of the moving Third Party Defendant subcontractors take issue with the propriety of MSA's claims against them for breach of warranty. The Third Party Defendants argue that such claims are not permissible in a third party action under Rule 14, Federal Rules of Civil Procedure. Rule 14 provides that a defendant may, as a third party plaintiff, implead a third party into a lawsuit if the third party "is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff."

MSA's claims against the Third Party Defendants here are based on MSA's status as a third party beneficiary of the Third Party Defendants' subcontracts with The Weitz Company, LLC. Specifically, MSA relies on section 7.4 of Exhibit C to the subcontracts, which provides as follows:

> Subcontractor warrants to the Owner, Architect and Contractor that (i) materials and equipment furnished under the Agreement will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, (ii) the Subcontractor's Work will be free from defects and will strictly comply with the requirements of the Subcontract Documents, (iii) no asbestos, polychlorinated bephenyl (PCB) or other known hazardous or toxic substance will be used in

2

connection with or incorporated into the Subcontractor's Work in violation of the Subcontract Documents, (iv) the Subcontractor's Work will at all times be free of all claims and liens, and (v) Subcontractor and its sub-subcontractors hold all required licenses to permit it to fully perform all of Subcontractor's Work. Subcontractor's Work not conforming to these requirements, including substitutions not properly approved and authorized shall be considered defective. These warranties shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Subcontract Documents. The Subcontractor agrees that the Contractor has the authority to reject any of the Subcontractor's Work which is defective or which is rejected by the Architect or Owner. Subcontractor shall provide written certificates confirming compliance with these warranties upon request of the Contractor. Liens of Subcontractor or its sub-subcontractors shall be removed or bonded over within 5 working days of Contractor's request therefor, to the extent Subcontractor has received payment therefore [sic].

In its claims against the Third Party Defendants for breach of contract, MSA alleges that, to the extent it is held liable to Plaintiffs, CC-Aventura, Inc. or Classic Residence Management, such liability is "directly caused by, based upon, arises out of or is related to" the individual subcontractor's material breach of the express warranty reprinted above. MSA is careful to note, however, that the subcontractor's liability to it for breach of the warranty is limited to the "extent that [the subcontractor's] breach of [the warranty], has caused MSA to be liable and obligated in damages to the Plaintiffs, or either one of them." Notwithstanding this limitation, the moving Third Party Defendants argue that MSA's breach of contract claims against them lie beyond the scope of Rule 14 because Plaintiffs' original action against MSA is based on MSA's failure to observe and report defects, as required by MSA's contract with the owner, Plaintiff CC-Aventura, Inc. The Third Party Defendants draw a distinction between their subcontracted construction work and MSA's duties to observe the construction and report defects to Plaintiff CC-Aventura, Inc.

In support of their argument that MSA's claims against them are independent of Plaintiffs' claims against MSA, some of the Third Party Defendants cite the following language from Plaintiffs' Third Amended Complaint against MSA:

> MSA did not agree to perform the actual construction of the Aventura Project and consequently, Plaintiff does not seek to hold MSA liable for any damages flowing from the deficient construction at the Aventura Project except to the extent that such damages are a consequence of MSA's failure to carry out its contractual duties under [its contract with CC-Aventura, Inc.]. By way of examples, but not limitation, (a) to the extent that the deficient design of wall dimensions to accomodate insulated piping in the Care Center caused or contributed to compression of insulation in too-narrow

3

> wall partitions . . . or (b) to the extent that MSA failed to advise CC-Aventura to reject work which failed to conform to the Contract Documents . . ., CC-Aventura seeks to hold MSA liable for damages flowing from these breaches and their consequences.

(Pl.'s Third Am. Compl., ¶ 56).  The Third Party Defendant subcontractors argue that since Plaintiffs are not seeking recovery from MSA for alleged construction defects, MSA's claims against them for breach of their express warranties are not dependant on the outcome of Plaintiffs' claims against MSA.  The Court disagrees.

Impleader may only be used when the third party defendant's potential liability is "dependent upon the outcome of the main claim" by the original plaintiff against the defendant/third party plaintiff. *See Southeast Mortg. Co. v. Mullins*, 514 F.2d 747 (5th DCA 1975). Conversely stated, an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it arises out of the same general set of facts as the main claim. *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5 th DCA 1967).  The third party defendant must be "liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff." *Id*.

MSA's claims of breach of contract here appear carefully crafted so as to bring them squarely within the ambit of Rule 14. MSA claims that its liability to Plaintiffs, if any, is "directly caused by, based upon, arises out of or is related to" the Third Party Defendant subcontractors' breaches of the express warranty quoted above. Upon a motion to dismiss, the Court is required to accept such an allegation as true.  Further, MSA could prove facts that support its claims against the Third Party Defendant subcontractors. *See Conley*, 355 U.S. at 45-46 (holding that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts that support a claim for relief).  For example, if MSA is found liable to Plaintiffs for failing to advise CC-Aventura to reject work which failed to conform to the Contract Documents, MSA may be able to prove that such failure was caused by a latent defect in a Third Party Defendant subcontractor's work. Accordingly, the Court finds that MSA's breach of warranty claims against the individual Third Party Defendant subcontractors are expressly dependant upon the outcome of Plaintiff's original claims against MSA. Each subcontractor's liability to MSA is wholly derivative of that outcome.  To the extent that MSA's liability to Plaintiffs is a result of an individual subcontractor's breach of the express warranty quoted above, MSA's claim against that subcontractor for breach of the warranty is entirely appropriate under Rule 14.

## MSA HAS PROPERLY STATED A CLAIM FOR BREACH OF WARRANTY

In addition to claiming that MSA's breach of warranty claims are inappropriate under Rule 14, some of the moving Third Party Defendant subcontractors argue that MSA has failed to allege sufficient facts to support a claim for breach of warranty. These Third Party Defendants rely on the case of *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So.2d 351 (Fla. 4 th DCA 1977) in support of their argument.

The Fourth District Court of Appeal held in *Dunham* that to properly state a claim for breach of warranty, a plaintiff needed to allege (1) facts in respect to the sale of goods; (2) identification of the types of warranties created, i. e. express warranty, implied warranty of merchantability, implied warranty of fitness for a particular purpose; (3) facts in respect to the creation of the particular warranty; (4) facts in respect to the breach of the warranty; (5) notice to seller of breach, and (6) the injuries sustained by the buyer as a result of the breach of warranty. *Id*.

As is plainly evident from the foregoing pleading requirements, the court in *Dunham* was dealing exclusively with the question of how to "properly plead a cause of action for breach of warranties [in the context of a sale of goods] under the Florida Uniform Commercial Code." *Id*. The case now before this Court does not involve a sale of goods and, as such, neither *Dunham* nor Article 2 of the Uniform Commercial Code applies. *See Taylor v. American Honda Motor Co., Inc*., 555 F.Supp. 59, 62 (M.D. Fla. 1982)(recognizing that *Dunham*'s pleading requirements do not apply to breach of warranty claims arising under the common law and outside the scope of the Uniform Commercial Code).

Furthermore, the fact-based pleading upon which the Third Party Defendant subcontractors insist is not required in federal diversity cases, even where otherwise required under state procedure. See *Id*. at fn. 3; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Rule 8(a), Federal Rules of Civil Procedure. The Court finds that MSA has complied with the notice pleading requirements of Rule 8(a) and, as noted above, the impleader requirements of Rule 14 and thus properly stated its claims against each of the Third Party Defendant subcontractors for breach of express warranty.

## MSA'S STATUS AS A THIRD PARTY BENEFICIARY OF THE SUBCONTRACTS BETWEEN THE WEITZ COMPANY, LLC AND THE SUBCONTRACTORS

One Third Party Defendant, Fred McGilvray, Inc. ("McGilvray") takes issue with MSA's claim that it is a third party beneficiary of its subcontract with The Weitz Company, LLC. McGilvray relies on language in §1.4 its subcontract, which provides that "[n]othing contained in the subcontract documents shall create any contractual or third-party beneficiary relationship between any parties other than the Contractor and the Subcontractor."  While this broad language clearly bodes against a finding that MSA is an intended third party beneficiary of the subcontract,  it is at odds with the more specific express warranty provision of §7.4 of Exhibit C to the subcontracts, which with equal clarity inures to the benefit of MSA.  Furthermore, the language upon which Fred McGilvray, Inc. bases its argument that MSA is not an intended third party beneficiary of the subcontract appears to apply only to sub-subcontractors.  Section 1.4 of the Exhibit C to the subcontracts is titled "Sub-subcontractor Rights and Responsibilities" and concerns only the relationship between the Third Party Defendant subcontractors and their sub-subcontractors. The language upon which McGilvray, Inc. relies appears solely intended to limit the rights of such sub-subcontractors and not those of MSA. If MSA *were* precluded from enforcing the express warranty provided in §7.4 by the general language in §1.4  denying the creation of any third party rights, the express warranty in §7.4 would be rendered entirely meaningless.

## MSA's ALTERNATIVE CLAIMS UNDER FLORIDA'S UNIFORM CONTRIBUTION AMONG TORTFEASORS ACT

One Third Party Defendant subcontractor, Concrete & Lumber Enterprises, Inc., takes issue with MSA's alternative claim against it under Florida's Uniform Contribution Among Tortfeasors Act, §768.31, Florida Statutes.  However, the Court has already held that MSA has properly stated a claim against the Third Party Defendant subcontractors under §768.31.  See OMNIBUS ORDER ON THIRD PARTY DEFENDANTS' MOTIONS TO DISMISS MSA ARCHITECTS, INC.'S FIRST AMENDED THIRD PARTY COMPLAINT, entered January 10, 2007 [DE #353].  Insofar as Concrete & Lumber bases its Motion to Dismiss MSA's statutory contribution claim on the basis of Florida's economic loss rule, that doctrine does not eliminate statutory causes of action. *See Rubio v. State Farm Fire & Casualty Co.*, 662 So.2d 956 (Fla. 3d DCA 1995) *rev. den*., 669 So.2d 252 (Fla.1996).

**CONCLUSION**

For all the foregoing reasons and authorities, it is hereby

ORDERED that

(1)     Coastal Masonry's Motion to Dismiss Count VIII of the Second Amended Complaint of MSA Architects, Inc., filed March 7, 2007 [DE #492];

(2)     Gamma USA, Inc.'s Motion to Dismiss Count IV of MSA Architects, Inc.'s Second Amended Third Party Complaint as Against Gamma USA, Inc.; filed March 8, 2007 [DE #499];

(3)     Nagelbush Mechanical, Inc.'s Motion to Dismiss Count I of MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 8, 2007 [DE #501];

(4)     Motion of Concrete & Lumber Enterprises Corp. to Dismiss the Second Amended Third Party Complaint of MSA Architects, Inc., filed March 8, 2007 [DE #502];

(5)     Master Plaster, Inc.'s Motion to Dismiss Count III of MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 8, 2007 [DE #504];

(6)     Motion of Concrete & Lumber Enterprises Corporation to Dismiss Count X of the Second Amended Third Party Complaint of MSA Architects, Inc. for Failure to State a Claim Cognizable Under F.R.C.P. 14, filed March 9, 2007 [DE #507]; and

(7)     Fred McGilvray, Inc.'s Motion to Dismiss MSA Architects, Inc.'s Second Amended Third Party Complaint, filed March 15, 2007 [DE #516] are DENIED.

DONE AND ORDERED in Chambers on May 1, 2007.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge Simonton
All counsel of record