**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.  06-21598-CIV-HUCK/SIMONTON

CC-AVENTURA, INC., a Delaware corporation,
*et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

### ORDER ON THIRD PARTY DEFENDANTS U.S. FIDELITY & GUARANTEE COMPANY AND COASTAL MASONRY INC.'S MOTION FOR SUMMARY JUDGMENT AS TO THE WEITZ COMPANY'S CLAIM ON PERFORMANCE BOND

This matter is before the Court on Third Party Defendants U.S. Fidelity & Guarantee Company ("USFG") and Coastal Masonry Inc.'s ("Coastal") Motion for Summary Judgment as to Count VIII of The Weitz Company, LLC's ("Weitz") Third Party Complaint, filed August 15, 2007 (D.E. #729).  The Court has considered the Motion, Weitz's Response, USFG and Coastal's Reply, and all other pertinent parts of the record.

### BACKGROUND

Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project").  Plaintiffs contracted with Weitz to construct the Project (the "Construction Contract").  Weitz then entered into multiple subcontract agreements to perform the construction.  Weitz entered into one such subcontract agreement with Coastal (the "Subcontract"), wherein Coastal was to perform masonry work on the Project.  USFG was Coastal's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of Coastal's work for Weitz.

After construction of the Project was complete, Plaintiffs sued Weitz and the Project's architect, MSA Architects, Inc. ("MSA"), for alleged defects in design and construction that resulted in problems such as mold and leaking in various areas of the Project facility. Thereafter, Weitz and MSA each sued several of Weitz's subcontractors, including Coastal. Weitz sued Coastal for breach of contract and common law indemnity (D.E. #160), and also sued USFG for breach of its Bond covering Coastal's work for Weitz (*id.*). MSA sued Coastal for breach of contract and statutory contribution (D.E. #490).

USFG and Coastal submitted a Motion for Summary Judgment as to Count VIII of Weitz's Third Party Complaint, which is the breach of Bond claim against USFG. In that Motion, which is the subject of this Order, USFG and Coastal make two main arguments. First, they argue that Weitz never provided notice that it considered Coastal in default of its Subcontract, which was necessary for Weitz to be able to recover on the Bond. Second, they argue that Weitz waived all potential claims on the Bond because it had notice of any alleged problems with Coastal's work during the Project's construction, but did not take legal action at that time.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative

---

[1] USFG and Coastal also initially argued that Weitz waived any future right to recover on the Bond when it bargained for Subcontract Change Order F527-32-005, attached to their Motion as Exhibit J. However, USFG and Coastal later expressly withdrew this argument. *See* Reply at 2.

evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

### 1. FAILURE TO PROVIDE NOTICE OF DEFAULT

USFG and Coastal argue in their Motion that Weitz never provided notice that it considered Coastal in default of its Subcontract. Such notice, they argue, was necessary for Weitz to be able to recover from USFG for breach of the Bond. This is because of a provision in the Bond triggering USFG's obligations "[w]herever [Coastal] shall be, and be declared by [Weitz] to be in default under the subcontract, [Weitz] having performed [its] obligations thereunder." USFG & Coastal Mot. for Summ. J., Ex. C. In that case, the Bond provides, "[USFG] may promptly remedy the default," or "[Weitz] after reasonable notice to [USFG] may, or [USFG] upon demand of [Weitz] may arrange for the performance of [Coastal's] obligation under the subcontract." *Id.* at ¶¶ 1-2. The Bond further specifies the financial terms and conditions of USFG's performance in the event it must satisfy Coastal's obligations to Weitz. *Id.* at ¶ 3.

In its Response, Weitz claims it did provide notice of default in the form of a letter addressed to both USFG and Coastal, dated July 11, 2006. *See* Weitz Resp., Ex. A(3). This letter stated, in pertinent part:

> Enclosed please find correspondence from CC-Aventura, Inc. demanding that Weitz take action wtih respect to structural and/or stucco related issues at the project that are alleged to have arisen out of the scope of your work. In essence, CC-Aventura has demanded that all stucco be removed from the building and that the building be stripped to the substrate prior to reapplication.
>
> Please consider this letter to be The Weitz Company's demand or additional demand as the case may be, that Coastal Masonry, USF&G and Essex Insurance take appropriate action in response to [CC-Aventura's] demand.
>
> Weitz has attempted to coordinate access to the towers to perform appropriate testing and we encourage you to contact Stephanie Fields, General Counsel for CC-Aventura to

> arrange access for your own testing. . . .
>
> Pursuant to the indemnity obligations of your Subcontract, please consider this letter to be formal demand that Coastal Masonry and Essex Insurance defend, indemnify and hold Weitz harmless from any claims arising out of subcontractor's scope of work. Paragraphs 7.4 and 7.6 and 10.1 of Exhibit "C" to the Subcontract Agreement require that subcontractor take appropriate action to remedy any deficiencies in the work. Failure of subcontractor to comply with the above requirements shall constitute a default under the subcontract agreement.
>
> Pursuant to the terms of the Performance Bond, please consider this letter as well to be formal notice of our intent to look to USF&G to honor its performance bond obligations in the event that subcontractor and general liability carrier fail to do so. . . .

USFG argues in its Reply that the July 11, 2006 letter was a "warning shot" rather than a declaration of default, and therefore insufficient to trigger USFG's obligations under the Bond. Thus, the parties do not dispute that Weitz was required to provide notice of Coastal's default in order to recover from USFG on the Bond. Where the parties disagree is on whether Weitz's July 11, 2006 letter provided such notice.

The scope of the Bond's notice requirement is a question of law properly decided by this Court on a motion for summary judgment. "The purpose of a performance bond is to guarantee the completion of the contract upon default by the contractor." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992). "A bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Id.* at 197. Under Florida law, "if a contract is unambiguous, the construction of the contract presents a question of law." *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006); *see also, e.g.*, *Langford v. Paravant, Inc.*, 912 So. 2d 359, 360 (Fla. 5th DCA 2005) ("Contract interpretation is generally a question of law for the court, rather than a question of fact.").

The Court has found little guidance from Florida courts as to what constitutes "notice of default" sufficient to trigger a surety's obligations on a performance bond. However, it finds the logic in two circuit courts of appeals decisions persuasive. In *L & A Contracting Co. v. Southern Concrete Services, Inc.* the Fifth Circuit, applying Florida law, held that "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." 17 F.3d 106, 111 (5th Cir. 1994). The court went on to say that "[t]he declaration must inform the surety that the

principal has committed a material breach or series of material breaches of the Subcontract, that the obligee regards the Subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.* The reason for this, the court explained, was that

> [a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee. Given the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond. Sureties deprived of a clear rule for notices of default would be reluctant to enter into otherwise profitable contracts.

*Id.*

The Second Circuit took a similar approach in *Elm Haven Construction Ltd. Partnership v. Neri Construction LLC*, where it applied Connecticut law. 376 F.3d 96 (2nd Cir. 2004). There, the court stated that an obligee's declaration of a principal's default sufficient to trigger a surety's obligations on a performance bond must be made in "precise terms," relying on *L & A Contracting. Id.* at 100. The *Elm Haven* court ultimately determined that the obligee had not provided notice of default of the principal because its communications did not demonstrate an intent to end its relationship with the principal, and to allow the surety to take over the principal's obligations on a project. *Id.* at 100-01.

The Court agrees that any declaration of default sufficient to trigger a surety's obligation on a performance bond should be direct and unambiguous. The instant action illustrates the logic of this approach. Here, the Bond terms specified that Weitz's rights and USFG's obligations under the Bond were triggered "[w]herever [Coastal] shall be, and be declared by [Weitz] to be in default under the subcontract." USFG & Coastal Mot. for Summ. J., Ex. C. Upon such breach and notice, USFG would be obligated to remedy Coastal's defaults or to arrange for the performance of Coastal's obligations under its Subcontract with Weitz. *Id.* Given that Wetiz's notice of default would effect such a drastic change in the parties' legal relationships– terminating the Subcontract with Coastal and triggering USFG's obligations to complete Coastal's masonry work on the Project– it makes sense that such notice should be direct and unambiguous.

Applying this rule here, and construing the evidence and factual inferences in a light most

5

favorable to Weitz, the Court finds summary judgment in favor of USFG and Coastal is appropriate. In the July 11, 2006 letter, which Weitz argues constituted notice of Coastal's default, Weitz informed Coastal of its duty to "take appropriate action to remedy any deficiencies" in the work Coastal performed on the Project, pursuant to the provisions in their Subcontract agreement regarding general warranties, Coastal's duty to correct defects, and Weitz's remedies in the event of Coastal's default. Weitz Resp., Ex. A(3); *see* USFG & Coastal Mot. for Summ. J., Ex. 3 ¶¶ 7.4, 7.6, 10.1. The letter further informed Coastal that "*[f]ailure . . . to comply with [those] requirements shall constitute a default under the subcontract agreement*." Weitz Resp., Ex. A(3) (emphasis added). Weitz also invoked the indemnity provision of the Subcontract, and directly asserted its rights thereunder. *Id.* Finally, Weitz's letter stated: "[p]ursuant to the terms of the Performance Bond, please consider this letter as well to be formal notice of our intent to look to USF&G to honor its performance bond obligations *in the event that [Coastal] and general liability carrier fail to do so.*" *Id.* (emphasis added). Weitz's letter did not explain the precise nature of the alleged defects, or give Coastal a specific time table for remedying the alleged defects. Further, Weitz addressed its letter to both Coastal and USFG, not only to USFG.

The Court finds that Weitz's July 11, 2006 letter did not provide USFG with direct and unambiguous notice of Coastal's default. As was the case in *Elm Haven*, Weitz's language did not indicate its intent to terminate the Subcontract with Coastal. To the contrary, Weitz affirmed the Subcontract and indicated that it still looked to Coastal to perform– Weitz even invoked specific provisions of the Subcontract, and threatened that Coastal would be in default if it failed to comply with those provisions. Based on such language, USFG would not have been put on notice that Weitz now looked to *it* to undertake the masonry work on the Project, rather than Coastal. Thus, Weitz failed to provide notice sufficient to trigger USFG's obligations under the Bond, and USFG is entitled to summary judgment as to Count VIII of Weitz's Third Party Complaint.

**2. WAIVER**

USFG and Coastal offer another basis for granting summary judgment in their favor as to Count VIII of Weitz's Third Party Complaint, arguing that because Weitz had notice of potential problems with Coastal's work on the Project during construction and did not take legal action, it waived any future claims under the Bond. However, as this Court has already determined that Weitz cannot bring a claim

against USFG under the Bond because it failed to provide notice of Coastal's default, it is not necessary to address this alternative basis.

Accordingly, it is hereby

ORDERED that USFG and Coastal's Motion for Summary Judgment as to Count VIII of Weitz's Third Party Complaint is GRANTED.

DONE and ORDERED, in Chambers, Miami, Florida, this 10th day of October, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Magistrate Judge Simonton
All counsel of record