UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation,
*et al.*,

    Plaintiffs,

vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,

    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER ON THE ISSUE OF AVAILABLE DAMAGES
## UNDER THE CONSTRUCTION CONTRACT

    THIS CAUSE is before the Court on the "mini-trial briefs" and responses thereto filed by CC-Aventura, Inc. and Classic Residence by Hyatt ("Plaintiffs") and The Weitz Company ("Weitz") as to the issue of available damages under the Construction Contract. *See* D.Es. #1051, 1054, 1084, 1087.  The Court has reviewed the briefs, responses, and all other relevant portions of the record, and is duly advised in the premises.

### BACKGROUND

    Plaintiffs CC-Aventura and Classic Residence are the respective owner and operator of a senior living community in Aventura, Florida ("the Project").  In 1998 CC-Aventura contracted with MSA Architects, Inc. ("MSA") to design the Project ("the Design Contract").  In 2001 CC-Aventura contracted with Weitz to act as general contractor in the Project's construction ("the Construction Contract").  Weitz then entered into multiple subcontract agreements to perform the construction.

    After construction of the Project was complete, Plaintiffs sued Weitz for alleged delays in the completion of the Project, as well as alleged defects in construction that resulted in, among other problems, leaks and mold in various areas of the Project facility and forced Plaintiffs to shut down

operations and relocate the residents. The operative complaint is the Third Amended Complaint, filed on December 22, 2006. *See* D.E. #321. This Complaint seeks a variety of damages, including, among others, compensation for costs incurred in relocating the residents, "loss of goodwill" and "[d]iminished trust and confidence . . . from residents and the public in general." *See id.* at ¶¶ 45-49.[1]

On August 3, 2006 MSA filed a Third Party Complaint naming several of Weitz's subcontractors. *See* D.E. #30.[2] Among these third party defendants was Gamma USA, Inc. ("Gamma"), a corporation specializing in window systems. On October 30, 2006 Weitz also filed a Third Party Complaint naming defendants with whom it had subcontracted. *See* D.E. #160. Again, Gamma was among these third party defendants.

On July 16, 2007 Gamma submitted a Motion for Summary Judgment as to the "non-compensatory" (or "consequential") damages Plaintiffs seek in their Third Amended Complaint against Weitz.[3] *See* D.E. #703. Numerous third and fourth party defendants joined in Gamma's Motion.[4] The Court held oral argument on the Motion for Summary Judgment on November 8, 2007. That same day, the Court issued an Order denying Gamma's Motion for Summary Judgment and finding the Construction Contract to be ambiguous as to Plaintiffs' available damages. *See* D.E. #855 at 3. The Court also announced its intent to hold a hearing at which the parties could present

---

[1] The Third Amended Complaint names both The Weitz Company, Inc. and The Weitz Company, LLC. The Weitz Company, Inc. provided a guaranty of The Weitz Company, LLC's performance under the Construction Contract. Both entities are referred to as "Weitz" in this Order.

[2] The most current version of MSA's Third Party Complaint is the Third Amended Third Party Complaint, filed on November 5, 2007. *See* D.E. #845.

[3] As a third party defendant brought in by Weitz, Gamma is entitled to raise the same defenses to Plaintiffs' claims as Weitz. *See* Fed. R. Civ. P. 14(a).

[4] These parties included Concrete & Lumber Enterprises, Corp. (D.E. #728), MG Drywall Systems Inc. (D.E. #800), Great American Insurance Co. (D.E. #804), United States Fidelity & Guarantee Co. (D.E. #805), American Standard Inc. d/b/a Trane (D.E. #806), Coastal Masonry, Inc. (D.E. #808), Sparta Insulation Co. (D.E. #810), Delta Painting, Inc. (D.E. #811), American Manufacturers Mutual Insurance Company (D.E. #812), BASF Corp. (D.E. #813), Aero Cooling Systems, Inc. (D.E. #814), and Metro Caulking & Waterproofing, Inc. (D.E. #815). Weitz also joined in Gamma's Motion (D.E. #755).

extrinsic evidence as to the issue of available damages under the Construction Contract.  *Id.*[5]

Pursuant to the parties' Joint Status Report (D.E. #894), as adopted by the Court (D.Es. #897, #984), Plaintiffs and Weitz each submitted "mini trial briefs" on the issue of available damages under the Construction Contract (D.Es. #1051, 1054), to which they attached extrinsic evidence in the form of exhibits.  Plaintiffs and Weitz also submitted responses to each others' briefs (D.Es. #1084, 1087).  On April 25, 2008 the Court held a hearing on the issue of available damages under the Construction Contract.  This Order memorializes the Court's rulings at the hearing as to that issue.

## ANALYSIS & CONCLUSION

### A.    Article 3 of the Construction Contract

For the reasons stated in open court at the November 8, 2007 and April 25, 2008 hearings, the Court finds Article 3 of the Construction Contract to be ambiguous as to what kinds of damages are available to Plaintiffs in the case of a breach of that contract, because it is "susceptible to more than one reasonable interpretation."  *Okeechobee Landfill, Inc. v. Republic Servs. of Fla., Ltd. P'ship*, 931 So. 2d 942, 945 (Fla. 4th DCA 2006).  That is, the Court finds Article 3 could reasonably be interpreted to permit Plaintiffs to seek "actual damages" or "damages" only in the form of damages related to delays in completion of the Project, or to permit Plaintiffs to seek "damages" or "actual damages" without such limitation.

Given that the Court finds Article 3 ambiguous, it may "resort to the rules of construction and extrinsic evidence to discern the parties' intent."  *Id.* (citations omitted).  If the facts of the case are not in dispute, the Court can "resolve the ambiguity as a matter of law."  *Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) (citation omitted).  However, if the parties present "different interpretations" of the facts, the issue of interpretation becomes one for the fact-finder and not for the Court.  *See Langford v. Paravant, Inc.*, 912 So. 2d 359, 360-61 (Fla. 5th DCA 2005) (remanding for a jury trial after reviewing extrinsic evidence to interpret an

---

[5] MSA Architects, Inc. also submitted a Motion for Partial Summary Judgment on the issue of available damages under the Design Contract.  *See* D.E. #740.  The Court denied this Motion as moot on November 8, 2007, as the parties orally agreed at the hearing held that day that Plaintiffs may seek "actual damages" for breach of the Design Contract, as such "actual damages" are defined by the common law of the state of Illinois.  *See* D.E. #855 at 4.

3

ambiguous contract, and finding such evidence to be conflicting).

As stated at the April 25, 2008 hearing, after reviewing the extrinsic evidence provided by Plaintiffs and Weitz the Court has determined that the facts surrounding the drafting of Article 3 and the parties' intent as to its meaning are in dispute. While the Court does not adopt Plaintiffs' recitation of the disputed facts in their response brief (D.E. #1084 at 20-23), such recitation affirms that the interpretation of Article 3 is for the fact-finder, not for the Court.[6]

### B.  Article 6 of the Construction Contract

For the reasons stated in open court at the April 25, 2008 hearing, the Court finds that the indemnity provision in Article 6 of the Construction Contract is not ambiguous, and that the plain meaning of that provision clearly demonstrates the parties' intent. *See Maher v. Schumacher*, 605 So. 2d 481, 482 (Fla. 3d DCA 1992) (quotations and citations omitted). Based on the plain meaning of the language in Article 6, the Court holds that the indemnity provision in Article 6 applies only to third party claims, and not to first party claims. The Court discussed its various bases for holding Article 6 unambiguous and only applicable to third party claims at the April 25, 2008 hearing, and need not reiterate them all here. Suffice it to say that the language of Article 6 is classic third party indemnity language, the provisions of Article 6 are those typically found in third party indemnity provisions, and nothing about Article 6 suggests otherwise.[7]

DONE AND ORDERED in Chambers, Miami, Florida on May 1, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record

---

[6] Further, as the Court stated at the April 25, 2008 hearing, Plaintiffs and Weitz must eventually decide who the fact-finder will be as to this issue. The parties have a variety of options: this Court, Magistrate O'Sullivan, an arbitrator, the jury as part of a separate trial as to available damages, or the jury as part of the main trial of this case.

[7] As stated at the April 25, 2008 hearing, because of the similarity of their respective provisions and language, and even though Illinois law applies to the Design Contract, the Court's analysis as to the indemnity provision in Article 6 of the Construction Contract applies equally to the indemnity provision in Article 5.1 of the Design Contract. That is, Article 5.1 of the Design Contract also applies only to third party claims, not first party claims.