UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation,
*et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER DENYING THIRD PARTY DEFENDANT XL SPECIALITY INSURANCE COMPANY'S REVISED MOTION FOR FINAL SUMMARY JUDGMENT

    This matter is before the Court on Third Party Defendant XL Specialty Insurance Company's ("XL") Revised Motion for Summary Judgment, filed April 4, 2008 (D.E. #1061).  The Court has considered the Motion, Weitz's Response, XL's Reply, and all other pertinent parts of the record.

### BACKGROUND

    Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project").  Plaintiffs contracted with Weitz to construct the Project (the "Construction Contract").  Weitz then entered into multiple subcontract agreements to perform the construction.  Weitz entered into one such subcontract agreement with Metro Caulking & Waterproofing, Inc. ("Metro Caulking"), wherein Metro Caulking was to perform waterproofing and caulking work on the Project (the "Subcontract").  The Subcontract contained a general warranty provision by Metro Caulking (section 7.4), and a provision under which Metro Caulking was obliged to correct any defective work (section 7.6).  *See* Subcontract, D.E. #1143-2 at 6.  XL was Metro Caulking's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of Metro Caulking's work for Weitz.

    After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas.  Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including Metro Caulking.  *See*  D.E. #160.  Weitz sued Metro Caulking for breach of contract in Count XXI and for common law indemnity

in Count XXVI, and also sued XL for breach of the Bond in Count XXVII.

At a hearing held on March 14, 2008, Weitz stipulated that all of its third party claims against sub-contractors and sureties are essentially "indemnification" claims. That is, Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs. *See* D.E. #1030.

On April 4, 2008 XL submitted a Revised Motion for Summary Judgment on Weitz's Third Party Complaint, making three main arguments. First, XL seeks summary judgment on the breach of performance bond claim arguing that Weitz never provided notice of Metro Caulking's default, which was necessary for Weitz to be able to recover on the Bond. Second, XL argues that Weitz cannot assert an indemnity claim against XL. Finally, XL argues that even if it is liable to Weitz, it is not liable for consequential damages - that is, for damages unrelated to the cost of completing and/or correcting Metro Caulking's work. The Court considers each argument in turn.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

I.   **Notice of Default**

In its Motion for Summary Judgment XL argues that Weitz never provided notice that it considered Metro Caulking to be in default of its Subcontract.  Such notice, XL contends, was necessary for Weitz to be able to recover from XL for breach of the Bond.  This is because of a provision in the Bond triggering XL's obligations  "[w]henever [Metro Caulking] shall be, and be declared by [Weitz] to be in default under the subcontract, [Weitz] having performed [its] obligations thereunder."  Performance Bond, D.E. #1061-2.  In such case, the Bond provides that "[XL] may promptly remedy the default," or "[Weitz] after reasonable notice to [XL] may, or [XL] upon demand of [Weitz] may arrange for the performance of [Metro Caulking's] obligation under the subcontract."  *Id.* ¶¶ 1-2.  The Bond further specifies the financial terms and conditions of XL's performance in the event it must satisfy Metro Caulking's obligations to Weitz.  *Id.* ¶ 3.

In its Response Weitz claims it did provide notice of default in the form of a letter dated October 12, 2005, which was addressed to Metro Caulking and copied to XL.  This letter stated, in pertinent part:

> Previously, The Weitz Company has notified you of the various deficiencies as alleged by [CC-Aventura] at the Health Center for [the Project].
>
> To date, you have taken no action to cure the various deficiencies, nor have we received any response on your behalf disputing [CC-Aventura's] allegations. . . .
>
> Please take notice that your failure to take action or even respond appropriately is in default of your subcontract agreement and by copy of this letter notice is given to your Surety of such default.  It is hereby requested that your Surety honor its obligations under its Performance Bond should this default persist.

D.E. #1061-14.

XL argues in its Reply that the October 12, 2005 letter was insufficient to trigger its obligations under the Bond.  Thus, the parties do not dispute that Weitz was required to provide notice of Metro Caulking's default in order to recover from XL on the Bond.  Where the parties disagree is on whether Weitz's October 12, 2005 letter provided such notice.

As the Court has previously held, any declaration of default sufficient to trigger a surety's

3

obligation on a performance bond should be direct and unambiguous. *See* D.E. #817. For guidance the Court looked to *L & A Contracting Co. v. Southern Concrete Services, Inc.*, in which the Fifth Circuit, applying Florida law, held that "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." 17 F.3d 106, 111 (5th Cir. 1994). The court went on to say that "[t]he declaration must inform the surety that the principal has committed a material breach or series of material breaches of the Subcontract, that the obligee regards the Subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.*; *see also Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (stating an obligee's declaration of a principal's default sufficient to trigger a surety's obligations on a performance bond must be made in "precise terms").

Applying this rule here, and construing the evidence and factual inferences in a light most favorable to Weitz, the Court finds summary judgment in favor of XL is inappropriate. In its October 12, 2005 letter, Weitz informed Metro Caulking that "your failure to take action or even respond appropriately *is in default of your subcontract agreement*." D.E. #1061-14 (emphasis added). Weitz further stated, "by copy of this letter notice is given to your Surety of such default. It is hereby requested that your Surety honor its obligations under its Performance Bond should this default persist." *Id.* This letter was copied to XL. *Id.* Based on these facts, XL is not entitled to judgment as a matter of law on the issue of notice - the language in Weitz's October 12, 2005 letter could reasonably be interpreted to indicate that Weitz declared Metro Caulking in default and looked to XL to take action under the Bond.[1]

---

[1] The facts in this case are unlike those in the Court's October 10, 2007 Order, which dealt with the same issue: whether Weitz gave sufficient notice of a principal's default to trigger a surety's obligations on a performance bond. *See* D.E. #817. In that case, Weitz sent a letter to the surety informing it of its duty to "take appropriate action to remedy any deficiencies" in the obligee's work on the Project, and stating that "[f]ailure . . . to comply with [those] requirements shall constitute a default under the subcontract agreement." D.E. #787-2 at 14. Weitz's letter in that case also stated: "[p]ursuant to the terms of the Performance Bond, please consider this letter as well to be formal notice of our intent to look to [the surety] to honor its performance bond obligations in the event that [the principal] and general liability carrier fail to do so." *Id.* There the surety was entitled to judgment as a matter of law on the issue of notice because, in contrast to the language in question here, such statements could not reasonably be interpreted as a clear declaration of default sufficient to trigger the surety's obligations on the bond.

**II.     Indemnity**

XL also argues that Weitz may not assert an indemnity *claim* against it.  XL appears to be responding to Weitz's stipulation that its third party claims are based on "indemnification," such that Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs.  *See* D.E. #1030.  Weitz responds that its stipulation only clarified the extent to which it sought *damages* against the third party defendants, so that its claims "comport with Rule 14."  Weitz Resp., D.E. #1143 at 10.

The Court rejects XL's argument that Weitz is attempting to assert a separate "indemnity" claim against it, not only because of the clear meaning of Weitz's stipulation limiting its sought *damages*, but also because the Third Party Complaint evinces no discrete indemnity claim against XL.  Thus, XL is not entitled to summary judgment on the basis of that argument.

**III.    Consequential Damages**

Finally, XL argues that even if it is liable to Weitz under the Bond, it is not liable for consequential damages - that is, for damages unrelated to the cost of completing and/or correcting Metro Caulking's work.  In support of this argument XL cites to *American Home Assurance Company v. Larkin General Hospital, Ltd.*, which states that "Florida courts have long recognized that the liability of a surety should not be extended by implication beyond the terms of the contract, i.e., the performance bond."  593 So. 2d 195, 198 (Fla. 1992) (citations omitted).  In that case, the Florida Supreme Court addressed "whether a surety on a performance bond can be held liable for consequential delay damages caused by the contractor's default."  *Id.* at 196.  The court ultimately held that "a surety cannot be held liable for delay damages due to the contractor's default unless the bond specifically provides coverage for delay damages."  *Id.*  Accordingly, XL argues, because the Bond did not explicitly provide for consequential damages, Weitz cannot recover them.

In response, Weitz points to the fact that the Bond explicitly incorporated the Subcontract.  *See* D.E. #1061-2.  Weitz also points to the fact that the Subcontract included this provision:

> The reference to this Agreement within the Subcontractor's performance bond, if any, shall be deemed as an express acknowledgment and consent by surety to be bound by all duties, liabilities and obligations which Subcontractor has to Contractor in the event of delays or time related impact damages suffered by Contractor as a result of Subcontractor's performance or failure to perform.

Subcontract ¶ 2.2, D.E. #1143-2 at 4.  Further, the Subcontract defines "damages" as "any additional or extended costs, expenses, general conditions or overhead (either Project site or home office), lost profits, inefficiency claims, or any other loss or damages whatsoever." *Id.* ¶ 11.6, D.E. #1143-2 at 7.

In general, "[a] bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Larkin*, 593 So. 2d at 197 (citation omitted).  Further, "[t]he intent of the parties to the contract should govern the construction of a contract.  To determine the intent of the parties, a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract." *Id.* (citations omitted).

Applying these principles, the *Larkin* court ultimately held the surety in that case not liable for delay damages because they were not explicitly provided for in the performance bond, stating that "the surety's liability for damages is limited by the terms of the bond." *Id.* at 198.  The court stated that "[t]he language in the performance bond, construed together with the purpose of the bond, clearly explains that the performance bond merely guaranteed the completion of the construction contract and nothing more." *Id.*

Here, however, it is not so clear that the parties did not intend for Weitz to be able to recover consequential damages.  The Bond explicitly incorporates the Subcontract, and it is a "generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." *OBS Co., Inc. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990).  Further, the Subcontract itself contains a provision stating that if the Bond references the Subcontract, such reference shall serve as an "express acknowledgment by surety to be bound by all duties, liabilities and obligations which Subcontractor has to Contractor in the event of delays or time related impact damages suffered by Contractor as a result of Subcontractor's performance or failure to perform."

Based on this language, the Court finds that XL is not entitled to summary judgment on the question of whether Weitz may recover consequential damages under the Bond.  While XL claims that *Larkin* forecloses this issue, the Court does not agree.  The court in *Larkin* did not examine whether the performance bond at issue incorporated the underlying subcontract, or the nature of the underlying subcontract's damage provisions, if any.  The Eleventh Circuit case *National Fire Insurance Company of Hartford v. Fortune Construction Company* provides guidance here.  320 F.3d 1260 (11th Cir. 2003). In that case, in determining the scope of the *Larkin* decision the court considered it important

that there was no damages provision in the underlying contract in *Larkin*. *Id.* at 1274 ("Importantly for purposes of our analysis, [in *Larkin*] there was no liquidated or other type of damages provision in the underlying contract."). In contrast, the contract in *National Fire* expressly incorporated the underlying subcontracts, which in turn expressly provided for the damages sought. *Id.* at 1275. In considering these factors and the "purpose" of the bond, the *National Fire* court determined that "[w]here a provision for liquidated delay damages is clearly delineated in the underlying contract and incorporated by reference into the bond, the surety is on notice of the time element of performance and the contractual consequences of failure to timely perform in accordance with the contract." *Id.* Likewise, here the Bond expressly incorporated the Subcontract, which included a provision for damages in the event of such incorporation.

## CONCLUSION

For the reasons state above, it is hereby

ORDERED AND ADJUDGED that XL's Motion for Summary Judgment (D.E. #1061) is DENIED.

DONE and ORDERED, in Chambers, Miami, Florida, this June 12, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Magistrate Judge O'Sullivan
All counsel of record