UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

### ORDER GRANTING THIRD PARTY DEFENDANT THE GUARANTEE COMPANY OF NORTH AMERICA, USA'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Third Party Defendant The Guarantee Company of North America, USA's ("Guarantee") Motion for Summary Judgment, filed April 7, 2008 (D.E. #1065). The Court has considered the Motion, Weitz's Response, Guarantee's Reply, and all other pertinent parts of the record.

### BACKGROUND

Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project"). Plaintiffs contracted with Weitz to construct the Project (the "Construction Contract"). Weitz then entered into multiple subcontract agreements to perform the construction. Weitz entered into one such subcontract agreement with Master Plaster, Inc. ("Master Plaster"), wherein Master Plaster was to perform stucco work on the Project (the "Subcontract"). The Subcontract contained a general warranty provision by Master Plaster (section 7.4), and a provision under which Master Plaster was obligated to correct defective work (section 7.6). *See* Subcontract, D.E. #1142-2 at 11-12. Guarantee was Master Plaster's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of Master Plaster's work for Weitz.

After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas. Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including Master Plaster. *See* D.E.

#160. Weitz sued Master Plaster for breach of the Subcontract in Count XXII and for common law indemnity in Count XXIII, and also sued Guarantee for breach of the Bond in Count XXIV.

At a hearing held on March 14, 2008, Weitz stipulated that all of its third party claims against sub-contractors and sureties are essentially "indemnification" claims. That is, Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs. *See* D.E. #1030.

On April 7, 2008 Guarantee submitted a Motion for Summary Judgment on Weitz's Third Party Complaint, making three main arguments. First, Guarantee seeks summary judgment on Weitz's claim for breach of the Bond, arguing that Weitz failed to satisfy the conditions precedent in order to recover on the Bond. Second, Guarantee argues that Weitz cannot assert an indemnity claim against Guarantee. Finally, Guarantee argues that even if it is liable to Weitz, it is not liable for consequential damages - that is, for damages unrelated to the cost of completing and/or correcting Master Plaster's work. The Court considers each argument in turn.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield*

*v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

**I.      Conditions Precedent to Recovering on the Bond**

In its Motion for Summary Judgment Guarantee argues that Weitz never complied with the conditions precedent laid out in the Bond. Because Weitz failed to comply with those conditions precedent, Guarantee contends, it never triggered Guarantee's obligations under the Bond and thus cannot now sue for breach.

In relevant part, the Bond provides:

> 3.      If there is no Owner[1] default, the Surety's obligation under this Bond shall arise after:
>
>> 3.1     The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor's default; and
>>
>> 3.2     The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor's Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>>
>> 3.3     The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

---

[1] Under the terms of the Bond, "Owner" is Weitz, "Contractor" is Master Plaster, and "Surety" is Guarantee. Bond, D.E. #1066 at 5.

Bond ¶ 3, D.E. #1066 at 6.  The Bond further provides that when Weitz has satisfied the conditions of Paragraph 3 laid out above, Guarantee "shall promptly and at [Guarantee's] expense" take one of several actions: arrange for Master Plaster to perform and complete the Subcontract with Weitz's consent, perform and complete the Subcontract itself through its own agents or independent contractors, arrange for a new subcontract with new contractor, or under certain circumstances, waive its rights to perform and complete, arrange for completion, or obtain a new contractor.  *Id.* ¶ 4.

"The purpose of a performance bond is to guarantee the completion of the contract upon default by the contractor."  *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992).  "As a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement."  *DCC Constructors, Inc. v. Randall Mech., Inc.*, 791 So. 2d 575, 576 (Fla. 5th DCA 2001).  Further, "[a] bond is a contract, and, therefore, a bond is subject to the general law of contracts."  *Larkin*, 593 So. 2d at 197.  Under Florida law, "if a contract is unambiguous, the construction of the contract presents a question of law."  *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006); *see also, e.g.*, *Langford v. Paravant, Inc.*, 912 So. 2d 359, 360 (Fla. 5th DCA 2005) ("Contract interpretation is generally a question of law for the court, rather than a question of fact."); *Mariner Cay Prop. Owners Ass'n, Inc. v. Topside Marina, Inc.*, 714 So. 2d 1130, 1131 (Fla. 4th DCA 1998) ("It is a cardinal rule that the construction of all written instruments is a question of law and belongs to the courts, provided 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.'") (citation omitted).

In its Motion, Guarantee argues that Weitz failed to satisfy any of the conditions precedent to triggering its liability under the Bond, as laid out in Paragraph 3.  Weitz argues that it did satisfy such conditions precedent, or was excused from satisfying them.  Thus, the parties do not dispute that Weitz was required to satisfy the conditions precedent laid out in Paragraph 3 in order to recover from Guarantee on the Bond, only whether Weitz did in fact satisfy them.[2]  The Court considers each

---

[2] *See Bank of Brewton, Inc. v. Int'l Fid. Ins. Co.*, 827 So. 2d 747, 753 (Ala. 2002) (stating, about a performance bond with language identical to the Bond here, that "[t]he plain language of paragraph 3 is that in the event of a contractor default, the surety's obligation under the bond shall arise after the occurrence of the events listed in subparagraphs 3.1, 3.2, and 3.3.).

condition precedent below.

### A.     Paragraph 3.1: Initial Notice

As stated above, Paragraph 3.1 of the Bond states that Weitz must "notif[y]" Master Plaster and Guarantee that it is "considering declaring a [Master Plaster] Default." Paragraph 3.1 also requires Weitz to "request[] and attempt[] to arrange a conference with [Master Plaster] and [Guarantee] to be held not later than fifteen days after receipt of such notice to discuss methods of performing the [Subcontract]." Weitz argues that it satisfied this initial notice requirement with a letter dated October 12, 2005, notifying Master Plaster of various alleged deficiencies in its work on the Project as alleged by CC-Aventura and stating:

> Please take notice that your failure to appropriately address the deficiencies alleged is in default of your subcontract agreement and by copy of this letter notice is given to [Guarantee] of such default. Pursuant to the terms of the subcontract Performance Bond, request is hereby made to arrange a conference with you and [Guarantee] within fifteen (15) days of receipt of this notice.

D.E. #1142-2 at 21.

Although Weitz did not use the precise terminology of Paragraph 3.1 in stating it was "considering" declaring a default, it did state that Master Plaster was in "default" of its Subcontract and provided notice of "such default" to Guarantee. The letter also explicitly requested a meeting within 15 days, as required by Paragraph 3.1. The Court finds these facts sufficient to create an issue as to whether Weitz fulfilled the condition precedent in Paragraph 3.1, because Weitz's language could reasonably be interpreted to satisfy the Bond's initial notice requirement.

### B.     Paragraph 3.2: Declaration of Default and Termination of Subcontract

Weitz argues that it satisfied the declaration of default requirement in Paragraph 3.2 with a letter dated April 6, 2006, which abided by the cure period because it came more than twenty days after its initial notice (the October 12, 2005 letter discussed above). The April 6, 2006 letter stated, in pertinent part,

> Previously The Weitz Company has placed both Master Plaster and [Guarantee] on notice of the deficiencies alleged by the Owner with respect to [the Project], and of Master Plaster's default due to its lack of response. . . .

> By copy of this letter, The Weitz Company again notifies [Guarantee] of its demand that Guarantee honor its obligations under the bond and requests a meeting within 15 days as required hereunder.
>
> While both Maser Plaster and [Guarantee] have defaulted in their obligations under the subcontract and the performance bond due to their previous failures to act in response to this matter, Weitz remains willing to consider any proposed resolution by either in discharge of their obligations, and is hopeful that an acceptable response will be provided at our meeting.

D.E. #1142-2 at 25-26.

Guarantee argues that this language at best amounts to a "conditional" default, not a formal declaration of default. Guarantee also points out that this letter requested a conference within 15 days as provided for by Paragraph 3.1, suggesting that Weitz had not yet formally declared a default.

As the Court has previously held, any declaration of default sufficient to trigger a surety's obligation on a performance bond should be direct and unambiguous. *See* D.Es. #817, 1220; *see also L & A Contracting Co. v. So. Concrete Servs., Inc.*, 17 F.3d 106, 111 (5th Cir. 1994) ("A declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language.") (applying Florida law); *Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (stating an obligee's declaration of a principal's default sufficient to trigger a surety's obligations on a performance bond must be made in "precise terms").[3] Here, the Bond itself states that Weitz must have "declared" a default by Master Plaster and "formally terminated [Master Plaster's] right to complete the contract." D.E. #1066 at 6. Like the other conditions precedent in Paragraph 3 of the Bond, Weitz was required to comply with the declaration of default requirement in order to recover from Guarantee. *See, e.g., Ins. Co. of N. Am. v. Metro. Dade County*, 705 So. 2d 33, 35 (Fla. 3d DCA 1997) (surety relieved of liability under

---

[3] As the court explained in *L&A Contracting*, the reason a declaration of default must be clear and unambiguous is because "[a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee." 17 F.3d at 111. Indeed, "[g]iven the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond." *Id.* In this case, the Bond's specific, methodical provisions for Weitz to end Master Plaster's obligations and trigger Guarantee's seem to illustrate this principle.

performance bond where obligee failed to comply with bond's notice of default provision); *Sch. Bd. of Escambia County, Fla. v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1353 (N.D. Fla. 2000) ("When the unambiguous language of a contract sets forth the manner in which a party must exercise a remedy in the event of a default, the party is bound by and must strictly adhere to the language. Accordingly, failure to adhere to a performance bond notification [of default] requirement is a material breach, resulting in the loss of an obligee's rights under the bond.") (citations omitted).

The Court finds that Weitz's language in its April 6, 2006 letter could not reasonably be interpreted to declare Master Plaster in default in clear, direct, and unequivocal language. Although Weitz states both Master Plaster and Guarantee are in "default," it goes on to request a meeting within 15 days as required by Paragraph 3.1 dealing with the "initial notice" requirement. Also, critically for the Court's analysis, Weitz's letter states that it "remains willing to consider any proposed resolution by *either* [Master Plaster or Guarantee] in discharge of their obligations . . . ." (Emphasis added). Such language does not directly, unequivocally inform Guarantee that Weitz now looks to it, rather than to Master Plaster, to fulfill the requirements of the Subcontract.

Paragraph 3.2 also required Weitz to "formally terminate[]" Master Plaster's right to complete the Subcontract. Weitz concedes that it did not terminate Master Plaster. Weitz Resp., D.E. #1142 at 8. However, Weitz argues that it "could not have" terminated Master Plaster when it discovered the deficiencies in its work because Master Plaster had "already completed its scope of work on the Project." *Id.* Thus, Weitz contends, terminating Master Plaster would have been "futile," and it was excused from performing that condition precedent. *Id.* at 9; *see, e.g.*, *Alvarez v. Rendon*, 953 So. 2d 702, 708-09 (Fla. 5th DCA 2007) ("Under the doctrine of futility, a party may be excused from performing a condition precedent to enforcement of the contract, if performance of the condition would be futile."). In response, Guarantee points out that Master Plaster had warranty and correction obligations under its Subcontract. Indeed, Weitz itself acknowledges as much in its Response, stating that when it discovered deficiencies in Master Plaster's stucco work "after completion" it "demand[ed] that [Master Plaster] honor its contractual warranty and post-completion obligations." D.E. #1142 at 8-9.

The Court finds that it would not have been futile for Weitz to terminate Master Plaster when it discovered the deficiencies in its work. According to Sections 7.4 and 7.6 of the

7

Subcontract, Master Plaster provided a general warranty for its work and also agreed to correct any defective work rejected by Weitz. *See* Subcontract, D.E. #1142-2. Based on those provisions, it is clear that Master Plaster still had active obligations to Weitz under the Subcontract, even if it had completed its stucco work. Thus, "formally terminat[ing]" Master Plaster as required by Paragraph 3.2 of the Bond would not have been futile, but rather would have been a legally significant event.

In sum, even drawing all reasonable inferences in Weitz's favor, the Court finds that Weitz failed to provide direct and unambiguous notice of Master Plaster's default. The Court also finds that Weitz failed to formally terminate Master Plaster's right to complete the Subcontract, a requirement under the Bond that would not have been "futile." Accordingly, Guarantee is entitled to summary judgment on Weitz's claim for breach of the Bond.

### C. Paragraph 3.3: Agreeing to Pay the Balance of the Subcontract Price

Paragraph 3.3 required Weitz to "agree[] to pay the Balance of the Contract Price" to Guarantee "in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner." Weitz concedes that it did not agree to pay the balance of the Subcontract price to Guarantee. Weitz Resp., D.E. #1142 at 9-10. However, Weitz argues that satisfying this requirement would also have been "futile," as there was "no balance left on [Master Plaster]'s subcontract" when the deficiencies were discovered. *Id.* The Court need not resolve this issue because it has already held that Weitz failed to comply with the conditions precedent laid out in Paragraph 3.2 of the Bond.

## II. Indemnity

Guarantee also argues that Weitz may not assert an indemnity *claim* against it. Guarantee appears to be responding to Weitz's stipulation that its third party claims are based on "indemnification," such that Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs. *See* D.E. #1030.

Another subcontractor's surety, XL Specialty, made this argument in its Revised Motion for Summary Judgment (*see* D.E. #1061) and the Court rejected it (*see* June 12, 2008 Order, D.E. #1220). Thus, to the extent Guarantee's Motion seeks summary judgment on any indemnity "claims" separate from Weitz's breach of Bond claim, it is denied for the reasons stated in the Court's June 12, 2008 Order. *See* D.E. #1220 at 5.

**III.     Consequential Damages**

Finally, Guarantee argues that even if it is liable to Weitz under the Bond, it is not liable for consequential damages - that is, for damages unrelated to the cost of completing and/or correcting Master Plaster's work.  Because the Court has already held Guarantee entitled to summary judgment on Weitz's claim under the Bond, there is no need to address this argument.[4]

## **CONCLUSION**

For the reasons state above, it is hereby

ORDERED AND ADJUDGED that Guarantee's Motion for Summary Judgment (D.E. #1065) is GRANTED.

DONE and ORDERED, in Chambers, Miami, Florida, this June 20, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Magistrate Judge O'Sullivan
All counsel of record

---

[4] In any case, the Court has already rejected this argument.  *See* D.E. #1220.