UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER DENYING THIRD PARTY DEFENDANTS CONCRETE & LUMBER ENTERPRISES CORPORATION AND GREAT AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

    This matter is before the Court on Third Party Defendants Concrete & Lumber Enterprises Corporation ("C&L") and Great American Insurance Company's ("Great American") Motion for Summary Judgment, filed April 3, 2008 (D.E. #1059). The Court has considered the Motion, Weitz's Response, C&L and Great American's Reply, and all other pertinent parts of the record, and is duly advised in the premises.

### BACKGROUND

    Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project"). Plaintiffs contracted with Weitz to construct the Project. Weitz then entered into multiple subcontract agreements to perform the construction. Weitz entered into one such subcontract agreement with C&L, wherein C&L was to provide work on the Project's concrete and structural elements (the "Subcontract"). *See* Subcontract, D.E. #1141-2, Exhibit 2. Great American was C&L's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of C&L's work for Weitz. *See* Bond, D.E. #1141-2, Exhibit 3.

After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas. Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including C&L. *See* D.E. #160. Weitz sued C&L for breach of the Subcontract in Count IX and for common law indemnity in Count X, and also sued Great American for breach of the Bond in Count XI.

At a hearing held on March 14, 2008, Weitz stipulated that all of its third party claims against sub-contractors and sureties are essentially "indemnification" claims. That is, Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs. *See* D.E. #1030.

On April 4, 2008 C&L and Great American submitted a Motion for Summary Judgment on Weitz's claim against Great American for breach of the Bond.[1] That Motion is now ripe for review, and is the subject of this Order.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or

---

[1] Although C&L and Great American submitted a joint Motion for Summary Judgment on Weitz's claim against Great American for breach of the Bond, the Court will refer to Great American as the movant.

2

evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

At issue in this Order is Great American's Motion for Summary Judgment on Weitz's claim against it for beach of the Bond. In general, "[t]he purpose of a performance bond is to guarantee the completion of the contract upon default by the contractor." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992). "As a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement." *DCC Constructors, Inc. v. Randall Mech., Inc.*, 791 So. 2d 575, 576 (Fla. 5th DCA 2001). Further, "[a] bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Larkin*, 593 So. 2d at 197. Under Florida law, "if a contract is unambiguous, the construction of the contract presents a question of law." *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006); *see also, e.g.*, *Mariner Cay Prop. Owners Ass'n, Inc. v. Topside Marina, Inc.*, 714 So. 2d 1130, 1131 (Fla. 4th DCA 1998) ("It is a cardinal rule that the construction of all written instruments is a question of law and belongs to the courts, provided 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.'").

Here, Great American argues it is entitled to summary judgment on the basis that Weitz did not satisfy conditions precedent to recovering for breach of the Bond, and on the basis that Weitz is essentially treating the Bond as an insurance policy. The Court considers each argument in turn.

## I.      Default by C&L

In its Motion for Summary Judgment Great American argues that C&L never defaulted on its Subcontract. Such default, Great American contends, was necessary to trigger Great American's obligations under the Bond, thus allowing Weitz to recover for breach of the Bond. This is because of a provision in the Bond triggering Great American's obligations "[w]henever [C&L] *shall be*, and be declared by [Weitz] to be in default under the subcontract, [Weitz] having performed [its] obligations thereunder." Bond, D.E. #1141-2, Exhibit 3 (emphasis added). Great American argues that Weitz never "advised C&L what work presently requires correction," and thus "C&L cannot be in default for not making the corrections." Reply, D.E. #1176 at 3.

The Bond itself does not contain a definition of C&L's "default," but the Subcontract, incorporated by reference into the Bond, does address C&L's "default" in Paragraph 10.1. That paragraph states:

> If [C&L] fails or neglects to carry out [its] Work in strict compliance with the Subcontract Documents or is otherwise in default of any of its obligations under the Subcontract Documents, and fails to commence and continue correction of such default or neglect with diligence and promptness, [Weitz] may, after 48 hours following delivery to [C&L] of written notice thereof and without prejudice to any other remedy [Weitz] may have, (i) supplement [C&L's] performance with additional material, supplies, equipment or labor, pay for same and deduct the amount so paid from any money then or thereafter due [C&L] (if such offset is not sufficient, [C&L] shall pay any deficiency promptly upon demand), or (ii) terminate [C&L's] continuing performance under the Agreement. Termination of performance may be immediate (without prior notice) in the event of conditions hazardous to persons or property. Such termination of performance shall be deemed to be for cause, and Section 10.4 [relating to Consequences of Termination for Cause] shall apply thereto.

*See* Subcontract, D.E. #1141-2, Exhibit 2 at 14. The Subcontract also contains a general warranty provision by C&L (Paragraph 7.4), and a provision under which C&L was obligated to correct defective work (Paragraph 7.6). *See id.* at 13.

In opposing Great American's Motion for Summary Judgment on this issue, Weitz points to an affidavit from Weitz's Project Superintendent and to letters Weitz sent to C&L as evidence that C&L performed deficient work on the Project, was placed on notice of the defaults and failed to take a "proactive role" in fulfilling its correction obligations in violation of Paragraphs 7.4 and 7.6 of the Subcontract, and also failed to reimburse Weitz for the cost of correcting such deficient work in violation of Paragraph 10.1. *See* Resp., D.E. #1141 at 8; D.E. #1141-2, Exhibits A, 4-5, 7.[2] Based on such evidence the Court finds there is a genuine issue as to whether C&L defaulted on the

---

[2] For example, in his affidavit Weitz's Project Superintendent stated that "C&L's work on the concrete shell was not within the tolerances required by the subcontract documents and therefore did not provide an acceptable exterior shell for application of the stucco finishes. C&L was informed of the defaults and requested to perform the corrective work, which it initially commenced doing. However, the extensive nature of the required corrective work and the lack of C&L manpower placed on the corrective work led to significant delays and eventually the stucco subcontractor, Master Plaster, Inc. . . . took over the fill portion of the corrective work." D.E. #1142-2, Exhibit A ¶¶ 9-11.

Subcontract, and thus Great American is not entitled to summary judgment on that basis.

## II.     Notice of C&L's Default

Great American also argues that Weitz never provided notice that it considered C&L to be in default of its Subcontract. Such notice, Great American contends, was necessary to trigger Great American's obligations under the Bond, thus allowing Weitz to recover for breach of the Bond. This is because of a provision in the Bond triggering Great American's obligations "[w]henever [C&L] shall be, *and be declared by [Weitz] to be in default under the subcontract*, [Weitz] having performed [its] obligations thereunder." Bond, D.E. #1141-2, Exhibit 3 (emphasis added). In such case, the Bond provides that "[Great American] may promptly remedy the default," or "[Weitz] after reasonable notice to [Great American] may, or [Great American] upon demand of [Weitz] may arrange for the performance of [C&L's] obligation under the subcontract." *Id.* ¶¶ 1-2.

In its Response Weitz claims it did provide notice of C&L's default in the form of a letter to Great American dated November 12, 2003. This letter stated, in pertinent part:

> The purpose of this letter is to provide you with notice of the performance defaults of C&L under its subcontract with Weitz regarding [the Project and Bond]. Because of C&L's defaults, Weitz may incur costs and liability relating [sic] these defaults that will exceed any amounts which would otherwise be payable to C&L under the subcontract. At such time as the total amount of costs incurred in excess of the subcontract amount is determined, Weitz will demand reimbursement for these costs as required by the terms of [the Bond].
>
> In addition, [CC-Aventura] has indicated to Weitz (in conversation) that it has incurred significant damages a large portion of which may be attributable to C&L's performance breaches on the project. At such time as I receive a copy of the formal claim from [CC-Aventura] in writing, I will forward that to you for your review. Please be advised that all non-conforming conditions remain your responsibility for the duration of the bonds, in accordance with their terms. The Weitz company hereby reserves all rights, actions, and defenses available to it at law and in equity. Thank you in advance for your assistance in resolving these defaults.

D.E. #1141-2, Exhibit 8.

Great American argues that the November 12, 2003 letter was insufficient to trigger its obligations under the Bond. Thus, the parties do not dispute that Weitz was required to provide notice of C&L's default in order to recover from Great American on the Bond. Where the parties

5

disagree is on whether Weitz's November 12, 2003 letter provided such notice.

As the Court has previously held, any declaration of default sufficient to trigger a surety's obligation on a performance bond should be direct and unambiguous. *See* D.Es. #817, 1220, 1235. For guidance the Court has looked to *L & A Contracting Co. v. Southern Concrete Services, Inc.*, in which the Fifth Circuit, applying Florida law, held that "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." 17 F.3d 106, 111 (5th Cir. 1994). The court went on to say that "[t]he declaration must inform the surety that the principal has committed a material breach or series of material breaches of the Subcontract, that the obligee regards the Subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.*; *see also Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (stating an obligee's declaration of a principal's default sufficient to trigger a surety's obligations on a performance bond must be made in "precise terms").[3]

Applying this rule here, and construing the evidence and factual inferences in a light most favorable to Weitz, the Court finds Great American is not entitled to summary judgment on the issue of notice of default. In its November 12, 2003 letter Weitz informed Great American that it was providing "*notice of the performance defaults of C&L* under its subcontract," and that when Weitz determined the amount of damage "relating [sic] *these defaults*" in excess of the remaining Subcontract balance it would "demand reimbursement for these costs as required by the terms of [the Bond]." D.E. #1141-2, Exhibit 8 (emphasis added). Further, Weitz advised Great American that "all non-conforming conditions remain *your responsibility for the duration of the bonds*." *Id.* (emphasis added). The Court finds that it would be reasonable to read such language referring to C&L's "defaults" as Weitz's formal declaration of C&L's default in accordance with the Bond. Weitz's statement to Great American that "all non-conforming conditions remain your responsibility

---

[3] As the court explained in *L&A Contracting*, the reason a declaration of default must be clear and unambiguous is because "[a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee." 17 F.3d at 111. Indeed, "[g]iven the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond." *Id.*

6

for the duration of the bonds, in accordance with their terms" could likewise be reasonably interpreted to mean Weitz now looked to Great American, rather than to C&L, to complete the Subcontract.

In support of its Motion Great American highlights the fact that none of Weitz's postconstruction letters "asserts [sic] that there are any uncorrected deficiencies in C&L's work or call for any corrective action by either C&L or GAIC." Mot., D.E. #1059 at 6. Great American argues that "[s]ince Weitz never demanded that [Great American] correct C&L's work, [Great American] cannot be in breach of the terms of the Performance Bond." Reply, D.E. #1176 at 3. However, under the clear terms of the Bond, Weitz was not required to "call for any corrective action" by either C&L or Great American to trigger Great American's obligations on the Bond, only to provide notice of C&L's default. Once C&L is in default and Weitz has declared such default, Great American's obligations are triggered. At that point, the Bond provides that either "[Great American] may promptly remedy the default," *or* "[Weitz] after reasonable notice to [Great American] may . . . arrange for the performance of [C&L's] obligation under the subcontract." Bond, D.E. #1141-2, Exhibit 3 at 16.[4]

In sum, the Court finds that Weitz's language in its November 12, 2003 letter could reasonably be interpreted as Weitz's notice of C&L's default, indicating that it looked to Great American to assume its responsibilities under the Bond. Thus, Great American is not entitled to judgment as a matter of law on the issue of notice.

---

[4] Great American also emphasizes that Weitz's November 12, 2003 letter states it "may" incur costs and liability relating to C&L's defaults and that it "will demand" reimbursement, apparently to suggest Weitz was making conditional, indefinite statements about C&L's default rather than a formal declaration. Mot., D.E. #1059 at 5. However, it would be reasonable to interpret such language as referring to Weitz's decision, after declaring C&L's default, to complete C&L's Subcontract obligations itself and seek payment from Great American later. This course of action is explicitly contemplated by Paragraph 3 of the Bond, which states that if Weitz completes the Subcontract and the reasonable cost exceeds the balance of the Subcontract price, Great American must pay the excess to Weitz.

**III.    The Bond as "Insurance"**

Great American also argues that Weitz seeks to "convert[] the Performance Bond into an insurance policy" and thus avoid the requirements for recovering on the Bond. Mot., D.E. #1059 at 10. Weitz responds that it is not seeking to recover on the theory that the Bond is a form of insurance, and states that under its theory of recovery, Great American's liability is coextensive with C&L's and limited by the terms of the Bond. Resp., D.E. #1141 at 13.

The Court rejects Great American's argument that Weitz is seeking to recover based on the theory that the Bond is somehow "insurance," and that its claim against Great American is "not founded on breach of the Performance Bond." Reply, D.E. #1176 at 4. Weitz has been consistent and clear in its position that it seeks to recover from Great American, and from all other sureties of subcontractors on the Project, based on their alleged breaches of the particular performance bonds at issue, and only insofar as Weitz is held liable to CC-Aventura. Thus, Great American is not entitled to summary judgment on the basis of its "insurance" argument.

## CONCLUSION

For the reasons state above, it is hereby

ORDERED AND ADJUDGED that C&L and Great American's Motion for Summary Judgment (D.E. #1059) is DENIED.

DONE and ORDERED, in Chambers, Miami, Florida, this June 30, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Magistrate Judge O'Sullivan
All counsel of record