UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER GRANTING THIRD PARTY DEFENDANT AMERICAN CASUALTY COMPANY OF READING PENNSYLVANIA'S MOTION FOR FINAL SUMMARY JUDGMENT

This matter is before the Court on Third Party Defendant American Casualty Company of Reading Pennsylvania's ("American Casualty") Motion for Final Summary Judgment, filed April 8, 2008 (D.E. #1069).  The Court has considered the Motion, Weitz's Response, American Casualty's Reply, and all other pertinent parts of the record, and is duly advised in the premises.

## BACKGROUND

Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project").  Plaintiffs contracted with Weitz to construct the Project.  Weitz then entered into multiple subcontract agreements to perform the construction.  Weitz entered into one such subcontract agreement with Delta Painting, Inc. ("Delta"), wherein Delta was to perform the painting work on the Project (the "Subcontract").  *See* Subcontract, D.E. #1139-2.  This Subcontract contained a general warranty provision by Delta at Paragraph 7.4, a general indemnity provision at Paragraph 7.5, and a provision under which Delta was obligated to correct defective work at Paragraph 7.6.  American Casualty was Delta's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of Delta's work for

Weitz.  *See* Bond, D.E. #1071-2.

After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas.  Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including Delta.  *See* D.E. #160.  Weitz sued Delta for breach of the Subcontract in Count XIV and for common law indemnity in Count XV, and also sued American Casualty for breach of the Bond in Count XVI.

At a hearing held on March 14, 2008, Weitz stipulated that all of its third party claims against sub-contractors and sureties essentially seek "indemnification."  That is, Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs.  *See* D.E. #1030.

On April 8, 2008 American Casualty submitted a Motion for Final Summary Judgment on Weitz's claim against it for breach of the Bond.  That Motion is now ripe for review, and is the subject of this Order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *See Allen*, 121 F.3d at 646.  On a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict.  *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 252.  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough.  *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

At issue in this Order is American Casualty's Motion for Summary Judgment on Weitz's claim against it for beach of the Bond. In general, "[t]he purpose of a performance bond is to guarantee the completion of the contract upon default by the contractor." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992). "As a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement." *DCC Constructors, Inc. v. Randall Mech., Inc.*, 791 So. 2d 575, 576 (Fla. 5th DCA 2001). Further, "[a] bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Larkin*, 593 So. 2d at 197. Under Florida law, "if a contract is unambiguous, the construction of the contract presents a question of law." *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006); *see also, e.g.*, *Mariner Cay Prop. Owners Ass'n, Inc. v. Topside Marina, Inc.*, 714 So. 2d 1130, 1131 (Fla. 4th DCA 1998) ("It is a cardinal rule that the construction of all written instruments is a question of law and belongs to the courts, provided 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.'") (citation omitted).

Here, American Casualty argues it is entitled to summary judgment on the basis that Weitz did not make a formal declaration of Delta's default on the Subcontract sufficient to trigger American Casualty's obligations on the Bond, and on the basis that Weitz is essentially treating the Bond as an insurance policy. The Court considers each argument in turn.

**I.     Notice of Delta's Default**

American Casualty argues that Weitz never provided notice that it considered Delta to be in default of its Subcontract. Such notice, American Casualty contends, was necessary to trigger its obligations under the Bond, thus allowing Weitz to recover for breach of the Bond. This is because of a provision in the Bond triggering American Casualty's obligations "[w]henever [Delta] shall be, *and be declared by [Weitz] to be in default under the subcontract*, [Weitz] having performed [its] obligations thereunder." Bond, D.E. #1071-2 (emphasis added). In such case, the Bond provides that "[American Casualty ] may promptly remedy the default," or "[Weitz] after reasonable notice to [American Casualty] may, or [American Casualty ] upon demand of [Weitz] may arrange for the

performance of [Delta] obligation under the subcontract." *Id.* ¶¶ 1-2.

In its Response Weitz claims that it twice provided notice of Delta's default in the form of letters addressed to Delta and copied to American Casualty - one dated December 30, 2005, the other dated April 11, 2006. The December 30, 2005 letter stated, in pertinent part:

> Re: Notice of Continued Default . . .
>
> Previously, we have forwarded several reports from [CC-Aventura's] consultant and our consultant detailing that the paint applied at the Health Care Building did not conform to the requirements of the Project Specifications. . . .
>
> We have also made demands upon you and [American Casualty] to correct such deficiencies; however, to date neither of you has confirmed that corrective action will be taken.
>
> Delta Painting's failure to take appropriate corrective action is a default of the Subcontract Agreement.
>
> Accordingly, please accept this letter as The Weitz Company's final written demand that Delta Painting or its Surety take appropriate corrective action to bring the paint application at the Health Center into conformance with the Project Specifications.
>
> Should we receive no confirmation of intent to perform corrective work within ten business days of the date of this letter, we will proceed to take corrective action and seek such costs from Delta Painting and [American Casualty].

D.E. #1071-5.

Weitz's April 11, 2006 letter stated, in pertinent part:

> Re: Notice of Continued Default . . .
>
> Previously, we have forwarded several reports from [CC-Aventura's] consultant and our consultant detailing that the paint applied at the Health Center did not conform to the requirements of the Project Specifications. . . .
>
> We have made numerous demands upon both Delta and American to correct this deficiency.
>
> Although [CC-Aventura] has offered to allow you to simply provide the additional coat of paint that you have omitted, it is our understanding that you have refused to do so.

> Delta's failure to take appropriate corrective action is a default of the subcontract. Weitz is left with no alternative but to retain a separate Painting Subcontractor to perform this work.
>
> Accordingly, please accept this letter as The Weitz Company's notice that it will take appropriate corrective action to bring the paint application at the Health Center into conformance with the Project Specifications.
>
> We will seek such costs and all other damages from Delta and American in this regard.

D.E. #1071-7.

American Casualty argues that neither letter was sufficient to trigger its obligations under the Bond. Thus, the parties do not dispute that Weitz was required to provide notice of Delta's default in order to recover from American Casualty on the Bond. Where the parties disagree is on whether Weitz's December 30, 2005 letter and/or its April 11, 2006 letter provided such notice.

As the Court has previously held, any declaration of default sufficient to trigger a surety's obligation on a performance bond should be direct and unambiguous. *See* D.Es. #817, 1220, 1235, 1250. For guidance the Court has looked to *L & A Contracting v. Southern Concrete Services* in which the Fifth Circuit, applying Florida law, held that "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." 17 F.3d 106, 111 (5th Cir. 1994). Further, "[t]he declaration must inform the surety that the principal has committed a material breach or series of material breaches of the Subcontract, that the obligee regards the Subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.*; *see also Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (obligee's declaration of principal's default sufficient to trigger surety's obligations on performance bond must be made in "precise terms").[1]

Applying this rule here, and even construing the evidence and factual inferences in a light

---

[1] As the court explained in *L&A*, a declaration of default must be clear and unambiguous because "[a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee." 17 F.3d at 111. Indeed, "[g]iven the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond." *Id.*

most favorable to Weitz, the Court finds that American Casualty is entitled to summary judgment on the issue of notice of default.  Both of Weitz's letters do state that Delta is in "default" of its Subcontract - and had Weitz maintained that position and indicated that Weitz now looked to American Casualty alone, both of its letters could reasonably be interpreted as declarations of default sufficient to trigger American Casualty's liability on the Bond.  However, in its December 30, 2005 letter Weitz also advised Delta to "please accept this letter as The Weitz Company's final written demand that *Delta Painting **or** its Surety* take appropriate corrective action."  D.E. #1071-5 (emphasis added).  Weitz also warned Delta that "should it receive no confirmation of intent to perform corrective work," it would take corrective action itself and "will . . . seek such costs from *Delta Painting **and** American Casualty*."  *Id.* (emphasis added).  In its April 11, 2006 letter, Weitz reiterated that it had made "numerous demands upon *both Delta **and** American* to correct [the painting] deficiency."  D.E. #1071-7 (emphasis added).  Weitz then stated its intention to perform the corrective work itself and announced that "Weitz will seek such costs and all other damages from *Delta **and** American*."  *Id.*  (emphasis added).  If Weitz wanted to trigger American Casualty's obligations on the Bond, it would have had to clearly and unambiguously notify American Casualty that it now looked to *it* to complete the Subcontract obligations, in accordance with the Bond. Neither of Weitz's letters do this.  Indeed, it would be unreasonable to interpret either letter as a clear and unambiguous declaration of Delta's default sufficient to trigger the Bond because, rather than indicating that Weitz was no longer dealing with or looking to Delta under the Subcontract and was commencing its relationship with American Casualty under the Bond, both letters explicitly look to *both* Delta and American Casualty to either take corrective action or to reimburse Weitz for taking such action itself.  *See Elm Haven*, 376 F.3d at 101.[2]

---

[2] In *Elm Haven*, performance bond language regarding notice of default was identical to the Bond language here.  In that case, the court stated that "[i]f [the obligee] wanted to trigger the Performance Bond . . . , it would have had to terminate its relationship with [the subcontractor] and give [the surety] an opportunity to complete the project itself or hire others to do so." 376 F.3d at 101.  The court held that certain of the obligee's letters failed to give notice of the subcontractor's default sufficient to trigger the surety's obligations under the bond where none of those letters "demonstrate[ed] an intent to end its relationship with [the subcontractor] and allow [the surety] to take over the project." *Id.*  Likewise, neither Weitz's December 30, 2005 letter nor its April 11, 2006 letter clearly indicates Weitz's intent to end its relationship with Delta and trigger American Casualty's obligations under the Bond.

Further, in a letter to Delta and American Casualty dated July 11, 2006 Weitz stated: "Pursuant to the terms of the Performance Bond, please consider this letter as well to be formal notice of our intent to look to American Casualty to honor its performance bond obligations *in the event that [Delta] and general liability carrier fail to do so*." D.E. #1071-10 (emphasis added). The clause "in the event that [Delta] and general liability carrier fail to do so" transforms this sentence from what could reasonably be read as a formal declaration of default into a conditional statement, a "warning shot" that appears intended to induce Delta into fulfilling the terms of its Subcontract, and enlisting American Casualty's help to do so. Such language further indicates that Weitz still looked to Delta to honor its Subcontract obligations, months after its December 30, 2005 and April 11, 2006 letters.[3]

In sum, the Court finds that Weitz's December 30, 2005 letter, its April 11, 2006 letter, or its July 11, 2006 letter do not constitute the clear and unambiguous notice of Delta's default sufficient to trigger American Casualty's obligations under the Bond. Thus, American Casualty is entitled to judgment as a matter of law on the issue of notice of default.

## II.   The Bond as "Insurance"

American Casualty also argues that Weitz "attempts to convert the Performance Bond from a guarantee of completion of Delta's work on the project, to a general police of insurance." According to American Casualty, Weitz's claim against it is not based on the Bond, because the Bond does not guarantee Delta's Subcontract obligations to indemnify Weitz. Weitz responds that its stipulation as to "indemnity" served to limit the scope of its sought damages against the third party defendants, not to plead a new cause of action against them.

The Court rejects American Casualty's argument that Weitz is seeking to recover based on the theory that the Bond is a general insurance policy, and that its claim against American Casualty is not founded on breach of the Bond. Weitz has been consistent and clear in its position that it seeks

---

[3] Weitz used identical language in a letter to different subcontractor's surety. *See* D.E. #817 at 4 ("Pursuant to the terms of the Performance Bond, please consider this letter as well to be formal notice of our intent to look to USF&G to honor its performance bond obligations in the event that subcontractor and general liability carrier fail to do so."). When the surety in that instance moved for summary judgment based on Weitz's failure to provide proper notice of default, the Court granted the motion based in part on such conditional language.

7

to recover from American Casualty, and from all other subcontractors' sureties, based on their alleged breaches of the particular performance bonds at issue and only insofar as Weitz is held liable to CC-Aventura. Weitz's references to seeking "indemnification" from third party defendants have pertained to the scope of its sought *damages*, not its theory of recovery against the sureties. Thus, American Casualty is not entitled to summary judgment on the basis of its "insurance" argument.

## **CONCLUSION**

For the reasons state above, it is hereby

ORDERED AND ADJUDGED that American Casualty's Motion for Final Summary Judgment (D.E. #1069) is GRANTED.

DONE and ORDERED, in Chambers, Miami, Florida, this July 8, 2008.

_____

Paul C. Huck
United States District Judge

Copes furnished to:
Magistrate Judge O'Sullivan
All counsel of record