UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

### ORDER GRANTING THIRD PARTY DEFENDANT FIDELITY & DEPOSIT COMPANY OF MARYLAND'S AMENDED AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Third Party Defendant Fidelity & Deposit Company of Maryland's ("F&D") Amended and Supplemental Motion for Summary Judgment, filed May 30, 2008 (D.E. #1173).[1] The Court has considered the Motion, Weitz's Response, F&D's Reply, and all other pertinent parts of the record, and is duly advised in the premises.

### BACKGROUND

Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project"). Plaintiffs contracted with Weitz to construct the Project. Weitz then entered into multiple subcontract agreements to perform the construction. Weitz entered into one such subcontract agreement with Aero Cooling Systems, Inc. ("Aero"), wherein Aero was to perform work on the heating, ventilating, and air conditioning

---

[1] The Motion was jointly filed by F&D and The Mountbatten Surety Company, Inc. However, Weitz did not sue The Mountbatten Surety Company, Inc. in its Third Party Complaint, but rather First Sealord Surety, Inc. *See* D.E. #160 at ¶¶ 47-53. It is unclear whether Moutbatten changed its name to First Sealord, as stated in the Third Party Complaint (*see* D.E. #160 at ¶ 50), or Mountbatten was acquired by and subsumed into First Sealord (*see* Weitz Response, D.E. #1249 n.3). In any case, earlier in this litigation the Court granted an agreed motion to drop First Sealord as a third party defendant in this action based on the parties' representation that F&D had assumed all of First Sealord's obligations under the Bond. *See* D.E. #512. Thus, in this Order the Court will refer only to F&D as the relevant third party defendant.

systems of the Project (the "Subcontract").  *See* Subcontract, D.E. #1173-3.  The Subcontract contained a general warranty provision by Aero (section 7.4), and a provision under which Aero was obliged to correct any defective work (section 7.6).  *See id.*  F&D served as Aero's surety on the Project, as it issued a performance bond (the "Bond") covering the scope of Aero's work for Weitz.  *See* Bond, D.E. #1173-4.

After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas.  Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including Aero.  *See* D.E. #160.  Weitz sued Aero for breach of the Subcontract in Count I and for common law indemnity in Count II, and also sued F&D for breach of the Bond in Count III.

At a hearing held on March 14, 2008, Weitz stipulated that all of its third party claims against sub-contractors and sureties essentially seek "indemnification."  That is, Weitz seeks to recover from the third party defendants only to the extent that Weitz is found liable to Plaintiffs.  *See* D.E. #1030.

On April 18, 2008 F&D submitted a Motion for Summary Judgment on Weitz's claim against it for breach of the Bond.  D.E. #1097.  F&D later submitted an Amended and Supplemental Motion for Summary Judgment on May 30, 2008.  D.E. #1173.  That Amended Motion is now ripe for review, and is the subject of this Order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *See Allen*, 121 F.3d at 646.  On a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict.  *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present

affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## **ANALYSIS**

In general, "[t]he purpose of a performance bond is to guarantee the completion of the contract upon default by the contractor." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992). "[T]he surety's liability for damages is limited by the terms of the bond. Florida courts have long recognized that the liability of a surety should not be extended by implication beyond the terms of the contract, i.e., the performance bond." *Id.* (citations omitted); *see also, e.g.*, *DCC Constructors, Inc. v. Randall Mech., Inc.*, 791 So. 2d 575, 576 (Fla. 5th DCA 2001) ("As a general rule, a surety's liability on a bond is determined strictly from the terms and conditions of the bond agreement."). Further, "[a] bond is a contract, and, therefore, a bond is subject to the general law of contracts." *Larkin*, 593 So. 2d at 197. Under Florida law, "if a contract is unambiguous, the construction of the contract presents a question of law." *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 550 (Fla. 3d DCA 2006); *see also, e.g.*, *Mariner Cay Prop. Owners Ass'n, Inc. v. Topside Marina, Inc.*, 714 So. 2d 1130, 1131 (Fla. 4th DCA 1998) ("It is a cardinal rule that the construction of all written instruments is a question of law and belongs to the courts, provided 'the language used is clear, plain, certain, undisputed, unambiguous, unequivocal, and not subject to conflicting inferences.'") (citation omitted).

Further, "[w]hen the unambiguous language of a contract sets forth the manner in which a party must exercise a remedy in the event of a default, the party is bound by and must strictly adhere to the language." *Sch. Bd. of Escambia County, Fla. v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1353 (N.D. Fla. 2000) (citation omitted). "Accordingly, failure to adhere to a performance bond notification requirement is a material breach, resulting in the loss of an obligee's rights under the bond." *Id.* (citation omitted); *see also, e.g.*, *Ins. Co. of N. Am. v. Metro. Dade County*, 705 So. 2d 33, 35 (Fla. 3d DCA 1997) (holding that a contractor's failure to comply with a bond's notice requirement before taking action "stripped the surety of its bargained for right and relieved the surety

of its liability for the instant claim" for breach of that bond); *Current Builders of Fla., Inc. v. First Sealord Sur., Inc.*, --- So. 2d ----, 2008 WL 859341, at * 3 (Fla. 4th DCA 2008) (stating that a surety's liability on a performance bond "depended upon whether [the contractor] complied with [that] bond").

Here, F&D made three main arguments in support of its Motion for Summary Judgment. First, it argued that because Weitz failed to abide by the terms of the Bond for a variety of reasons, it cannot now recover against F&D for breaching that Bond. F&D's various arguments in this vein can be reduced to two main contentions: that Weitz failed to provide clear notice of Aero's default sufficient to trigger F&D's obligations under the Bond, and that Weitz failed to allow F&D to exercise its bargained-for rights under the Bond. F&D also argued that Weitz cannot assert an indemnity claim against it, and that even if F&D is liable to Weitz it is not liable for consequential damages - that is, for damages unrelated to the cost of completing and/or correcting Aero's work. F&D withdrew its indemnity and consequential damages arguments. *See* Reply, D.E. #1263 at 2 n.1. Thus, the Court considers only F&D's first argument regarding Weitz's failure to comply with the terms of the Bond.

**I.     Failure to Comply with Terms of the Bond: Notice of Default**

In support of its Motion for Summary Judgment F&D argues that Weitz did not comply with the Bond's "notice of default" requirement, pointing to the Bond provision triggering F&D's obligations "[w]henever [Aero] shall be, and be declared by [Weitz] to be in default under the subcontract, [Weitz] having performed [its] obligations thereunder." Bond, D.E. #1173-4. In such case, the Bond provides that "[F&D] may promptly remedy the default," or "[Weitz] after reasonable notice to [F&D] may, or [F&D] upon demand of [Weitz] may arrange for the performance of [Aero's] obligation under the subcontract," all subject to the explanatory provisions of the Bond's third paragraph. *Id.*

In its Response, Weitz claims that its November 12, 2003 letter to F&D provided such required notice. That letter stated, in pertinent part:

> The purpose of this letter is [sic] provide you notice of the performance defaults of Aero Cooling Systems, Inc. under its subcontract with Weitz regarding the . . . Project and Bond. Because of Aero's defaults, Weitz has hired a replacement

4

> subcontractor and is incurring expenses to cure Aero's breaches and complete their performance, and these costs are likely to exceed any amounts which would otherwise be payable to Aero under the subcontract. At such time as the total amount of costs incurred in excess of the subcontract amount is determined, Weitz will demand reimbursement for these costs as required by the terms of the . . . bond.

D.E. #1173-5. The letter concluded by stating: "Please be advised that all non-conforming conditions remain your responsibility for the duration of the bonds, in accordance with their terms. . . . Thank you in advance for your assistance in resolving these defaults." *Id.* Thus, the parties do not dispute that Weitz was required to provide notice of Aero's default in order to recover from F&D under the Bond. Where the parties disagree is on whether Weitz provided such notice.

As the Court has previously held, any declaration of default sufficient to trigger a surety's obligation on a performance bond should be direct and unambiguous. *See* D.Es. #817, 1220, 1235, 1250, 1261. For guidance the Court has looked to *L & A Contracting v. Southern Concrete Services* in which the Fifth Circuit, applying Florida law, held that "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." 17 F.3d 106, 111 (5th Cir. 1994). Further, "[t]he declaration must inform the surety that the principal has committed a material breach or series of material breaches of the Subcontract, that the obligee regards the Subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.*; *see also Elm Haven Constr. Ltd. P'ship v. Neri Constr. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (obligee's declaration of principal's default sufficient to trigger surety's obligations on performance bond must be made in "precise terms").[2]

Applying this rule here, F&D is not entitled to summary judgment on the issue of notice of default. Significantly, in its November 13, 2003 letter Weitz advised F&D that the purpose of the communication was to "provide you notice of the *performance defaults* of Aero Cooling Systems, Inc. under its subcontract with Weitz regarding the . . . Project and *Bond*." (Emphasis added). In

---

[2] As the court explained in *L&A*, a declaration of default must be clear and unambiguous because "[a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee." 17 F.3d at 111. Indeed, "[g]iven the consequences that follow a declaration of default, it is vital that the declaration be made in terms sufficiently clear, direct, and unequivocal to inform the surety that the principal has defaulted on its obligations and the surety must immediately commence performing under the terms of its bond." *Id.*

5

the same letter Weitz informed F&D that it had hired a replacement subcontractor "[b]ecause of Aero's defaults," and stated that "at such time as the total amount of costs incurred in excess of the subcontract amount is determined, Weitz will demand reimbursement for these costs *as required by the terms of the . . . bond*." (Emphasis added). Further, the letter advised F&D that "all non-conforming conditions remain your responsibility *for the duration of the bonds*, in accordance with their terms. . . . Thank you in advance for your assistance in resolving these *defaults*." (Emphasis added). This language is very similar to the language at issue in another motion for summary judgment by a subcontractor's surety, Great American Insurance Company. *See* D.E. #1250. There, the Court determined that Great American was not entitled to summary judgment on the issue of notice of default, as Weitz's language could reasonably be interpreted as providing clear and unambiguous notice of the subcontractor's default.[3] Likewise, here Weitz refers explicitly to Aero's "defaults," repeatedly invokes the Bond and F&D's obligations thereunder, and uses language indicating that Weitz has shifted from dealing with Aero under the Subcontract to dealing with F&D under the Bond.

F&D argues that such language "merely advises [F&D] of the alleged and unspecified performance defaults of Aero," citing to the cases *Elm Haven,* 376 F.3d 96 and *Balfour Beatty Construction, Inc. v. Colonial Ornamental Iron Works, Inc.*, 986 F. Supp. 82 (D. Conn. 1997) as

---

[3] In that Order, the Court stated:

> In its November 12, 2003 letter Weitz informed Great American that it was providing "*notice of the performance defaults of C&L* under its subcontract," and that when Weitz determined the amount of damage "relating [sic] *these defaults*" in excess of the remaining Subcontract balance it would "demand reimbursement for these costs as required by the terms of [the Bond]." D.E. #1141-2, Exhibit 8 (emphasis added). Further, Weitz advised Great American that "all non-conforming conditions remain *your responsibility for the duration of the bonds*." *Id.* (emphasis added). The Court finds that it would be reasonable to read such language referring to C&L's "defaults" as Weitz's formal declaration of C&L's default in accordance with the Bond. Weitz's statement to Great American that "all non-conforming conditions remain your responsibility for the duration of the bonds, in accordance with their terms" could likewise be reasonably interpreted to mean Weitz now looked to Great American, rather than to C&L, to complete the Subcontract.
>
> D.E. #1250 at 6-7.

support. Neither of these cases helps F&D defeat the genuine issue as to notice of default, however. In *Elm Haven*, the court held that certain of the obligee's letters failed to give notice of the subcontractor's default sufficient to trigger the surety's obligations under the bond where those letters merely sought the surety's "assistance" with its complaints about the subcontractor's performance of its obligations, and provided "notice" to the subcontractor that its work would be performed by others in accordance with subcontract's default provisions. 376 F.3d at 99. Those letters did not provide notice of default because they did not "demonstrate[] an intent to end [the obligee's] relationship with [the subcontractor] and allow [the surety] to take over the project." *Id.* at 101. Here, the November 12, 2003 letter referred to Aero's "defaults" multiple times, invoked the Bond itself multiple times, and could reasonably be interpreted to demonstrate Weitz's intent to end its relationship with Aero and hold F&D liable under the Bond - especially given that Weitz announced it had hired a subcontractor to replace Aero. In *Balfour Beatty*, the court held that a contractor failed to provide sufficient notice of a subcontractor's default to trigger a surety's obligations under a performance bond (with a notice provision identical to the one here) where the contractor's letters only referred to the subcontractor's delay in performance. 986 F. Supp. at 86. Unlike the letter at issue here, neither letter in *Balfour Beatty* referenced the subcontractor's default, the performance bond at issue, or included any language to suggest that the contractor sought to trigger the surety's liability under the bond. 986 F. Supp. at 84 n.4-5.

In sum, the Court finds that Weitz's November 12, 2003 letter could reasonably be interpreted as clear notice of Aero's default, indicating that Wetiz now sought to hold F&D liable under the Bond. Thus, F&D is not entitled to judgment as a matter of law on that issue.[4]

## II.    Failure to Comply with Terms of the Bond: Unilateral Action

F&D also seeks summary judgment on the basis that Weitz essentially absolved F&D of liability under the Bond by taking unilateral action rather than giving F&D its bargained-for options to perform, as provided by the Bond. F&D claims that Weitz was required to offer F&D an opportunity to act under the Bond, but that instead it unilaterally undertook correction and

---

[4] Weitz also claims it provided notice of default in the form of letters dated April 22, 2004, June 7, 2005, January 6, 2006, and March 24, 2008. *See* Weitz Resp., D.E. #1249 at 8-9. Because the Court has already determined there is a genuine issue as to whether the November 12, 2003 provided the required notice of default, it need not analyze these letters.

completion of Aero's allegedly defective work. F&D argues that "Weitz did not inform [F&D] of Aero's alleged performance defaults until **after** Weitz had unilaterally undertaken completion and correction of Aero's allegedly defective work in direct derogation of the clear requirements of the Performance Bond." Mot., D.E. #1173 at 8 (emphasis in original). According to F&D this violated the express terms of the Bond, which provided that upon Weitz's declaration of Aero's default, either F&D "may promptly remedy the default" or "[Weitz], *after reasonable notice to [F&D]* may, or [F&D] upon demand of [Weitz] may arrange for the performance of [Aero's] obligation under the subcontract." Bond, D.E. #1173-4 (emphasis added). F&D claims Weitz did not provide "reasonable notice" because Weitz had already hired replacement subcontractors to perform Aero's obligation. *See* Letter, D.E. #1173-5 ("Because of Aero's defaults, Weitz has hired a replacement subcontractor and is incurring expenses to cure Aero's breaches and complete their performance . . . .").

In response, Weitz argues that it was entitled to complete Aero's work in such manner because the Bond incorporated the Subcontract, and thus was modified by Paragraphs 10.1 and 10.4 of the Subcontract. Paragraph 10.1 of the Subcontract addressed "Subcontractor's Default" and provided:

> If [Aero] fails or neglects to carry out [its] Work in strict compliance with the Subcontract Documents or is otherwise in default of any of its obligations under the Subcontract Documents, and fails to commence and continue correction of such default or neglect with diligence and promptness, [Weitz] may, after 48 hours following delivery to [Aero] of written notice thereof and without prejudice to any other remedy [Weitz] may have, (i) supplement [Aero's] performance with additional material, supplies, equipment or labor, pay for same and deduct the amount so paid from any money then or thereafter due [Aero] (if such offset is not sufficient, [Aero] shall pay any deficiency promptly upon demand), or (ii) terminate [Aero's] continuing performance under the Agreement. Termination of performance may be immediate (without prior notice) in the event of conditions hazardous to persons or property. Such termination of performance shall be deemed to be for cause, and Section 10.4 [relating to Consequences of Termination for Cause] shall apply thereto.

D.E. #1173-3 (emphasis added). Paragraph 10.4 of the Subcontract dealing with "Consequences of Termination for Cause" stated, in pertinent part:

8

> Upon a termination of [Aero's] continuing performance under the Agreement for cause, [Weitz] may, without limitation to any other available remedies, proceed as follows: (i) direct [Aero] to immediately leave the site, but to give possession of all completed materials and supplies at the site of stored off-site, to [Weitz] for use in completing [Aero's] work; . . . [Weitz] shall also provide or cause to be provided such other materials, supplies, tools, equipment, machinery, labor, services and other items necessary to complete [Aero's] work; or (ii) by registered or certified mail addressed to [F&D] . . . require [F&D] to provide such materials, supplies, tools, equipment, machinery, labor, services and other items as may be necessary to complete [Aero's] work in strict compliance with the Subcontract Documents. [Weitz] shall apply any unpaid balance of the Subcontract Sum to pay for such completion costs; provided, that [Weitz] may first require [Aero] or [F&D] . . . to fund any anticipated excess completion costs. In all such events, if the unpaid balance of the Subcontract Sum exceeds the costs of completing [Aero's] Work together with interest on such costs and together with any offsets and deductions available to [Weitz], such excess shall be paid to [Aero]. *However, if such costs, interest, deductions and offsets exceed such unpaid balance, [Aero] or [F&D] shall pay the difference to [Weitz] upon demand.*

*Id.* (emphasis added).

According to Weitz, these provisions permitted it to complete Aero's work and then ask F&D to pay for the completion costs that exceeded the balance of the Subcontract. Weitz claims its November 12, 2003 letter did exactly that: "advis[ed] [F&D] of the default and request[ed] that [it] fund the completion costs in excess of the contract balance." Resp., D.E. #1249 at 10. In so arguing, Weitz focuses on the last sentence of Paragraph 10.4 which states that F&D shall pay the difference between the completion costs and the Subcontract balance "upon demand." Apparently Weitz believes this provision negated the provision in the Bond stating that Weitz may arrange for the completion of Aero's work and seek repayment "after reasonable notice" to F&D. Bond, D.E. #1173-4.

In general, it is an "accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." *OBS Co., Inc. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). However, it is also a generally accepted rule that "[w]hen provisions in a contract appear to be in conflict, they should be reconciled, if possible." *Whitley v. Royal Trails Property Owners' Ass'n, Inc.*, 910 So. 2d 381, 385 (Fla. 5th DCA 2005) (citation omitted). Indeed, "[a]n

9

interpretation of a contract which gives a reasonable, lawful and effective meaning to all of the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect. *Id.* (quotations and citations omitted).

The Court concludes that the "reasonable notice" provision of the Bond and the provisions in Paragraph 10.1 and 10.4 are not inconsistent, and one did not modify or overrule the other. It is completely consistent that Weitz was obligated to provide "reasonable notice" if it chose to pursue the option in the Bond allowing it to complete Aero's work and seek repayment from F&D, and also that F&D was obligated to pay for the cost of completing Aero's obligations "upon demand" from Weitz - *after* Weitz gave "reasonable notice."

In support of its argument that the incorporated Subcontract modifies the Bond, Weitz points to *Dooley and Mack Constructors, Inc. v. Developers Surety and Indemnity Company*, 972 So. 2d 893 (Fla. 3d DCA 2008). In that case, the court held a provision of a subcontract that was incorporated into the performance bond overrode an explicit notice requirement in the bond. However, to the extent the logic in *Dooley* would lead to a different result here, the Court rejects it. Indeed, the Court finds the dissent in that case more persuasive. 972 So. 2d at 895-900. The dissent states that "[t]he majority . . . seizes upon an obscure provision of the subcontract agreement, not signed by the surety, to afford [the contractor] a remedy not contemplated either in the default provision of the subcontract or the bond," and in the dissent's view "[t]he majority's interpretation of the agreements in this case effectively converts the bond into an insurance policy." *Id.* at 895-96. The dissent invokes the principle that "in any dispute between the obligee and a surety, the bond is necessarily the primary determinant of surety liability," citing to *Larkin*, 593 So. 2d at 198, observing that the bond's notice provision was very clear and that "[t]here [was] no provision of the subcontract which negates the notice requirements of the bond." *Id.* at 898-99. The Court finds this to be the case here. No provision in the Subcontract overrode the Bond's clear requirement that Weitz give F&D "reasonable notice" before completing Aero's work itself and seeking repayment.

Given the Court's determination that none of the Subcontract's provisions overrode the Bond's clear "reasonable notice" requirement, the Court finds that Weitz failed to comply with that requirement. In its November 12, 2003 letter, Weitz stated that "[b]ecause of Aero's defaults, Weitz has hired a replacement subcontractor and is incurring expenses to cure Aero's breaches and

complete their performance." Letter, D.E. #1173-5.  Clearly, Weitz provided *no* notice that it was going to arrange for the completion of Aero's performance itself, much less "reasonable" notice.[5] Indeed, in its Response Weitz does not argue that it provided such "reasonable notice," but rather that it was released from having to comply with that requirement by provisions in the Subcontract. Thus, Weitz "failed to meet the requirements of the Performance Bond, excusing [the surety] from its performance."  *Elm Haven*, 376 F.3d at 101.

### CONCLUSION

In sum, the Court finds that while Weitz did provide notice of default sufficient to trigger F&D's obligations under the Bond, it did not comply with another requirement of the Bond - the provision ensuring F&D would have "reasonable notice" before Weitz arranged for the completion of Aero's work.  Thus, Weitz discharged F&D's liability, and cannot now recover for breach of the Bond.  Accordingly, it is hereby

ORDERED AND ADJUDGED that F&D's Amended and Supplemental Motion for Summary Judgment (D.E. #1173) is GRANTED.

DONE and ORDERED, in Chambers, Miami, Florida, this July 14, 2008.

                                                         Paul C. Huck

Copies furnished to:                       United States District Judge
Magistrate Judge O'Sullivan
All counsel of record

---

[5] Of course, since Weitz had already hired a replacement subcontractor and began incurring expenses in completing Aero's work by the time it sent F&D a letter on November 12, 2003, none of Weitz's later letters could have provided the required "reasonable notice" either.