UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited
liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER DENYING THIRD PARTY DEFENDANT CONCRETE & LUMBER ENTERPRISES CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE WEITZ COMPANY, LLC

    This matter is before the Court on the Motion of Third Party Defendant, Concrete & Lumber Enterprises Corporation ("C&L"), for Partial Summary Judgment Against Third Party Plaintiff, The Weitz Company, LLC ("Weitz"), Regarding its Claim for Indemnity for Consequential Damages Other than Delay, filed December 15, 2008 (D.E. #1509). The Court has considered the Motion, Weitz's Response, C&L's Reply, and all other pertinent parts of the record, and is duly advised in the premises.

### I. BACKGROUND

**A. General**

    Plaintiffs, CC-Aventura, Inc. and Classic Residence by Hyatt, are the respective owner and operator of a senior living community in Aventura, Florida (the "Project"). Plaintiffs contracted with Weitz to construct the Project (the "Prime Contract").[1] Weitz then entered into multiple subcontract agreements to perform the construction. Weitz entered into one such subcontract agreement with C&L, wherein C&L was to perform forming for certain concrete services necessary to the Project

---

[1] A copy of the Prime Contract is attached as "Exhibit B" to Plaintiffs' Third Amended Complaint at D.E. #329.

(the "Subcontract").[2]

After construction of the Project was complete, Plaintiffs sued Weitz for alleged defects in construction that resulted in problems such as mold and leaking in various areas. Thereafter, Weitz filed a Third Party Complaint suing several of its subcontractors, including C&L. *See* The Weitz Company, LLC's Second Amended Third Party Complaint, D.E. #1540. Weitz is suing C&L for breach of the Subcontract in Count XII, negligence in Count XIII, and common law indemnity in Count XIV of its Second Amended Third Party Complaint. In each of these Counts, Weitz only seeks damages from C&L in the event that Weitz is found liable to the Plaintiffs for injuries resulting from the actions of C&L. In the parlance of this case, the damages Weitz is seeking from the various third party defendants are known as "pass-through" damages.

**B. The Previous Limitation of Damages Dispute**

Earlier in this case, Third Party Defendant Gamma USA, Inc. submitted a Motion for Summary Judgment as to the "non-compensatory" (or "consequential") damages Plaintiffs seek in their Third Amended Complaint against Weitz.[3] *See* D.E. #703. Weitz subsequently joined in Gamma's motion, as did numerous third and fourth party defendants, including C&L. *See* D.E. # 755 and 728. Gamma's argument centered on whether "Paragraph 3" of the Prime Contract limited Weitz's liability to Plaintiffs to only damages caused by delay in completion of the project. The Court ultimately denied Gamma's Motion for Summary Judgment, finding the Paragraph 3 of the Prime Contract ambiguous as it relates to any limit on Plaintiffs' available damages. *See* D.E. #855 at 3. When denying Gamma's Motions, the Court announced that it would hear further argument as to the meaning of Paragraph 3, and that the parties could present extrinsic evidence as to the issue of available damages under the Prime Contract. *See id.*

Both Plaintiffs and the Weitz Defendants submitted "mini trial briefs" on the issue of Paragraph 3's meaning. D.E. # 1054 and 1084. After reviewing the parties' briefs and holding a hearing on the issue, the Court determined that the facts surrounding the meaning of Paragraph 3

---

[2] A copy of the Subcontract is attached as Exhibit B to C&L's present Motion at D.E. #1509.

[3] As a third party defendant brought in by Weitz, Gamma is entitled to raise the same defenses to Plaintiffs' claims as Weitz. *See* Fed. R. Civ. P. 14(a).

were in dispute and could not be determined by the Court as a matter of law. *See* D.E. #1121. Accordingly, the meaning of Paragraph 3 as it relates to the extent of damages available to Plaintiffs is still at issue in this case.

### C. The Present Limitation of Damages Dispute

In its Motion for Partial Summary Judgment, C&L argues that although the meaning of Paragraph 3 remains at issue in the first-level litigation (as between the Plaintiffs and the Weitz Defendants), the Court should find that the meaning of Paragraph 3 is clear in the second-level litigation (as between Weitz and C&L). C&L argues that because the Prime Contract (including Paragraph 3) is incorporated into the Subcontract, and because Weitz is on record unequivocally arguing that Paragraph 3 limits CC-Aventura to the recovery of delay damages only, Weitz's interpretation of Paragraph 3 should control as applied to the subcontract agreement between Weitz and C&L. Accordingly, C&L argues that it is entitled to a partial summary judgment finding that the damages Weitz can pass through to C&L are limited to delay damages only.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture

cannot be the basis for denying summary judgment).

In summary judgment disputes concerning the interpretation of a contract's provisions, "when the language of a contract is clear and unambiguous, its interpretation or construction is a matter of law." *Action Nissan, Inc. v. Hyundai Motor Am.*, 2008 U.S. Dist. LEXIS 66618 (M.D. Fla. Aug. 29, 2008). "Whether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation. However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996). Further, "when a document's language is clear, a court cannot indulge in construction or interpretation of its plain meaning." *Id.*

### III. ANALYSIS

The main thrust of C&L's argument is that Weitz's "intention and understanding regarding Paragraph 3 of the Prime Contract are unequivocally stated" in Weitz's previous filings related to the interpretation of Paragraph 3 as it applies between Weitz and CC-Aventura. *See* D.E. #1509, p. 6. C&L excerpts certain portions of Weitz's arguments from various of Weitz's filings, and concludes that because "there is no dispute that the intent of Weitz and C&L are identical with respect to paragraph 3, the Court can rule as a matter of law that only consequential damages related to delay are available under the Subcontract." *Id.* at 7.

Weitz argues that C&L has neglected certain controlling provisions of the Subcontract, which make resort to either Weitz's or C&L's understanding of Paragraph 3 unnecessary to resolve the present dispute. Weitz argues that C&L has entirely ignored provisions of the Subcontract which allow Weitz to pass through damages beyond delay damages to C&L. Whereas the ambiguous language of Paragraph 3 was the only provision detailing the available damages between Weitz and CC-Aventura, Weitz argues that the agreement between it and C&L includes several unambiguous Subcontract provisions that clearly state that Weitz may pass through any damages "whatsoever" to C&L.

After reviewing the arguments made by the parties, and considering to the plain language of the Subcontract provisions set out below (including those from the incorporated Prime Contract), the Court concludes that the damages Weitz may seek from C&L are not necessarily limited to delay damages.

### A. The Contract Provisions

Section 1.9 of the Subcontract incorporates the Prime Contract into the agreement between Weitz and C&L. Section 1.8 of the Subcontract defines "Prime Contract" as "that certain agreement entered into between Owner [CC-Aventura] and Contractor [Weitz] in connection with the Project," including all related documents and conditions. Section 1.8 further states that "[a]ll terms not otherwise defined in the Subcontract Documents are used as defined in the Prime Contract." Accordingly, by operation of sections 1.9 and 1.8 of the Subcontract, Paragraph 3 of the Prime Contract is incorporated into the Subcontract agreement between Weitz and C&L.

The pertinent portion of Paragraph 3, which defines the term "damages" in the Prime Contract, reads:

> As used herein and in the Contract Documents, the terms "actual damages" or "damages" shall mean and include not only actual damages sustained by Owner but also any and all consequential damages which the Owner may suffer by reason of delays in the completion of the Phase I or in all of the Work, as applicable, specifically including, but not limited to, all costs, preopening and marketing expenses, additional financing costs resulting from delayed receipt of residential proceeds, (including interest, penalties, late payment charges and other costs) loss of financing, any added general administrative costs and other direct and indirect consequential items of cost or loss sustained by Owner.

Section 11.5 of the Subcontract also defines "damages," stating: "For purposes of this Subcontract Agreement . . . 'damages' means any additional or extended costs, expenses, general conditions or overhead (either Project or home office), lost profits, ineffiency claims, or any other loss or damages whatsoever."

Finally, relevant to this motion for summary judgment, is Section 1.3 of the Subcontract, which states that the "Contractor [Weitz] shall have the benefit of all rights, remedies and redress against the Subcontractor [C&L] which the Owner [CC-Aventura], under the Prime Contract, has against the Contractor [Weitz]."

### B. Reading the Provisions Together

"It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is

to be interpreted as part of the writing." *OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). In this case, there is no doubt that both the Subcontract and the Prime Contract must be read together.

The term "damages" is defined in two provisions of the Subcontract agreement—Paragraph 3 of the Prime Contract and Section 11.5 of the Subcontract. Section 1.8 of the Subcontract states that "[a]ll terms not otherwise defined in the Subcontract Documents are used as defined in the Prime Contract." This clause plainly means that if a term is defined in the Subcontract, that Subcontract term, and not the Prime Contract term, controls. Accordingly, the definition of "damages" contained in Section 11.5 of the Subcontract is the operative definition in this dispute between Weitz and C&L.

Moreover, while the Prime Contract Paragraph 3 definition of "damages" is ambiguous, the Court finds the Section 11.5 Subcontract definition of damages straightforward and unambiguous. It clearly states that "damages" include losses well beyond those caused by delay in completion of the Project. Section 11.5 states that damages includes "any additional or extended costs, expenses, general conditions or overhead (either Project or home office), lost profits, ineffiency claims, or any other loss . . . ." In fact, the term "damages" under Section 11.5 is broadly defined to include any damages "whatsoever."

Under the terms of the Subcontract agreement between Weitz and C&L, Section 11.5's clear and unambiguous definition of damages controls. The Court, therefore, has no need to revisit the meaning of "damages" as defined in Paragraph 3. *See Goldsmith v. Brockhouse*, 979 So. 2d 1135, 1137 (Fla. 3d DCA 2008) ("When (as here) the terms of the pertinent agreement are clear, lawful, and unambiguous, a court should simply enforce them as written."). Accordingly, the Court concludes that Weitz is not limited to suing C&L for only delay damages under the terms of the Subcontract agreement.[4]

## C. Section 1.3

C&L also argues that Section 1.3 of the Subcontract limits Weitz to suing C&L for

---

[4] As Weitz points out in its Response, although the Subcontract may allow Weitz to sue C&L for damages beyond delay damages, Weitz only seeks pass-through damages from C&L. Should Weitz's interpretation of Paragraph 3 as applied to CC-Aventura prevail, the damages passed through to C&L will be limited to delay damages.

"damages" as Weitz understands the meaning of that term pursuant to Paragraph 3. As already explained above, the definition of damages as it applies between C&L and Weitz is contained in Section 11.5 of the Subcontract. Weitz's interpretation of the definition of damages under Paragraph 3 is irrelevant when interpreting the Subcontract agreement.[5] However, even without considering the expansive definition of damages in Section 11.5, the Court does not read Section 1.3 as limiting Weitz's right of recovery against C&L to only delay damages.

---

[5] Although not argued by Weitz, the Court is not convinced that if the interpretation of damages under Paragraph 3 of the Prime Contract were in play in this present dispute, Weitz would be bound by the position it argued in the first-level litigation of the issue against CC-Aventura. C&L's arguments attempt to restrict Weitz from arguing an interpretation of Paragraph 3 in this Weitz/C&L dispute that runs contrary to its previously argued understanding of Paragraph 3.

As an initial matter, as detailed in the analysis above, although Paragraph 3 is incorporated into the Subcontract agreement, it is modified by the terms defined in the Subcontract. As such, the "Paragraph 3" as applied between Weitz and CC-Aventura is not the same "Paragraph 3" at issue between Weitz and C&L. However, even if Paragraph 3 were not modified by provisions of the Subcontract, Weitz would not be estopped from arguing a different interpretation of that paragraph as it applies between C&L and Weitz.

The interpretation of Paragraph 3 between Weitz and CC-Aventura is still at issue. While Weitz previously argued that Paragraph 3 limits CC-Aventura to delay damages only, the Court has not adopted Weitz's position. *See, e.g., Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 702 (7th Cir. 1994) (Posner, J.) (Judicial estoppel is "about abandoning winning, not losing, grounds."). "In this era of liberal notice pleading, only when a party has obtained a palpable and unfair advantage from a position previously taken should that party be judicially estopped from changing its position." *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F. Supp. 967, 975 (D.N.J. 1995).

There are many situations, as here, where "a party is free to assert a position from which it later withdraws-or even to assert, in the alternative, two inconsistent positions of its potential claims or defenses." *Desjardins v. Van Buren Community Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994). Here, in defending against Plaintiffs' suit, Weitz argues that Plaintiffs' damages are limited to those caused by delay. Should Weitz ultimately fail in that argument, Weitz can rightfully seek compensation for any damages that it owes Plaintiffs from those third-parties that ultimately may be responsible. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir, 1982) (noting the "permissible practice, now freely allowed, of simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached."); *Konstantinidis v. Chen*; 626 F.2d 933, 938 (D.C. Cir. 1980) (stating that in some cases "utilization of the judicial estoppel theory would be out of harmony with (the modern rules of pleading) and would discourage the determination of cases on the basis of the true facts as they might be established ultimately.").

Section 1.3 states that "[Weitz] shall have the benefit of all rights, remedies and redress against [C&L] which [CC-Aventura], under the Prime Contract, has against [Weitz]." This provision does not limit Weitz to pass-through damages as Weitz understands the definition of "damages" under Paragraph 3. Rather, a plain reading of this provision provides that Weitz may sue C&L for any remedies or redress which CC-Aventura ultimately has against Weitz. Application of Section 1.3 depends on the *actual remedies and redress* CC-Aventura has against Weitz, and not the remedies or redress to which Weitz *believes* CC-Aventura is entitled.

At the drafting of this Order, the scope of the remedies available CC-Aventura against Weitz are unsettled. Although Weitz vehemently defended its position that Paragraph 3 limits CC-Aventura to delay damages, the ultimate outcome of that matter remains at issue in this case. Because the Court does not know the limits of the remedies available to CC-Aventura against Weitz, the Court cannot say, at this point and as a matter of law, what remedial limits Section 1.3 might subject Weitz to in its claims against C&L.

## IV.  CONCLUSION

For the reasons state above, it is hereby

ORDERED AND ADJUDGED that the Motion of Third Party Defendant, Concrete & Lumber Enterprises Corporation ("C&L"), for Partial Summary Judgement Against Third Party Plaintiff, The Weitz Company, LLC ("Weitz"), Regarding its Claim for Indemnity for Consequential Damages Other than Delay (D.E. #1509) is DENIED.

DONE and ORDERED, in Chambers, Miami, Florida, this January 30, 2009.

_____
Paul C. Huck
United States District Judge

Copes furnished to:
Magistrate Judge O'Sullivan
All counsel of record