**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.:  06-21598-CIV-HUCK/O'SULLIVAN

CC-AVENTURA, INC., a Delaware corporation, *et al.*,
    Plaintiffs,
vs.

THE WEITZ COMPANY, LLC, an Iowa limited liability company, *et al.*,
    Defendants.
_____/

AND ALL RELATED ACTIONS
_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This matter came before the Court on Fourth-Party Defendant American Standard Inc.'s ("Trane") Renewed Motion for Partial Summary Judgment Against Fourth-Party Plaintiffs Fidelity & Deposit Company of Maryland and Aero Cooling Systems, Inc. (D.E. #1652).  The Court has reviewed the motion and the responses, the record, and is otherwise duly advised in the premises. Because the Court finds that the limitation-of-liability provision in Trane's Standard Terms and Conditions is enforceable, the Court grants partial summary judgment in Trane's favor and against Aero.  Accordingly, Aero's maximum possible recovery, under any claims that it has asserted against Trane, is limited to the purchase price of the equipment that Trane sold to Aero and Aero shall not be entitled to recover any incidental or consequential damages from Trane.

## PROCEDURAL BACKGROUND

The dispute between Aero and Trane arises out of a much larger dispute between CC-Aventura, Inc., the owner of a senior living community, and The Weitz Company, LLC, the contractor hired to build the senior living community.  A brief background of the facts of the underlying dispute and the summary judgment motion at issue is available in the Court's July 14, 2009 order.  *CC-Aventura, Inc. v. The Weitz Company, LLC*, No. 06-21598-CIV, 2009 WL 2132706, at *1 (S.D. Fla. July 14, 2009).

Before filing this motion for partial summary judgment, Trane filed its Motion for Complete Summary Judgment Against Fourth-Party Plaintiff Fidelity & Deposit Company of Maryland and

Motion for Partial Summary Judgment Against Fourth-Party Plaintiff Aero Cooling Systems, Inc. (D.E. #1429), on November 12, 2008.  In that motion, Trane argued that (1) Trane was not secondarily liable to Fidelity, Aero's surety; (2) the Uniform Commercial Code applied to the contracts between Trane and Aero; (3) Fidelity was subject to all defenses Trane had against Aero; (4) Aero and Fidelity's claim for breach of implied warranties was subject to dismissal because Trane had disclaimed all implied warranties; (5) Aero and Fidelity's claim for common law indemnification failed as a matter of law because no tort claims had been asserted against Aero or Fidelity and, even if they were, those claims would be barred by the economic loss rule; and (6) Aero and Fidelity's damages, if any, are limited by the limitation-of-liability provisions in the contracts between the parties. (D.E. #1430.)  Accordingly, Trane requested complete summary judgment in its favor and against Fidelity and complete summary judgment against Aero and Fidelity as to their claims for common law indemnification and breach of implied warranty.  Trane further requested partial summary judgment as to the amount of damages that Aero and Fidelity could recover from Trane.

Aero and Fidelity met Trane's motion for summary judgment by arguing that Fidelity was properly a party to the dispute between Aero and Trane, and that the UCC did not apply to the parties' transaction because the predominant purpose of the contract was for the provision of services and not the sale of goods.  (D.E. #1474.)  Therefore, Aero and Fidelity argued, Aero's purchase order, which was sent to Trane after Trane sent Aero its proposal and which excluded the broad waivers favoring Trane, constituted the parties' agreement.  Aero and Fidelity also argued that the disclaimer of implied warranties contained within Trane's form did not meet the conspicuousness requirements of Fla. Stat. 672.316(2) and, even if the UCC governed the parties' transaction, the disclaimer of implied warranties was "knocked out" by a conflicting term in Aero's purchase order. In addition, Aero and Fidelity argued that their common law indemnification claim was legally sufficient and not barred by the economic loss rule.  Finally, Aero and Fidelity argued that the limitation-of-liability provision in Trane's contract was either superseded by Aero's purchase order or was unenforceable as unconscionable.  Based on the affidavit of Paul Morrissette (Aero's President) that Aero filed with its opposition to Trane's motion for summary judgment, Aero argued that the limitation-of-liability provision was unconscionable because Trane had supposedly sold and

2

installed equipment that it knew was defective. This allegation prompted Aero to file a motion to strike (D.E. #1502). The Court then granted Aero leave to file an amended affidavit specifying the factual basis, if any, for Morrissette's assertion that Trane had knowingly sold defective products. (D.E. #1523.)

Instead of filing such an affidavit, Aero filed an affidavit that for the first time brought into question whether Aero had ever received the proposals that Trane argued formed a part of the parties' contract. (D.E. #1538.) This was a change in Aero's position because Morrissette's prior affidavit conceded that he had received and reviewed Trane's proposals and that, in fact, the purpose of Aero's purchase orders was "to accept Trane's offer." (D.E. #1475.) Unsurprisingly, Trane reacted with politely understated disappointment at Aero's abrupt change of course and described Morrissette's revised affidavit as a "sham" that Aero was putting forward to defeat summary judgment and moved that the affidavit be stricken. (D.E. #1568.) In an attempt to move the case forward, the Court held a hearing on the matter and entered an order (D.E. #1580) granting Aero leave to amend its pleadings to match its new position that its purchase order, not Trane's proposal, constituted Aero's contract with Trane. If, however, Aero so amended its pleadings, the Court ordered that Aero and its insurance carriers pay the costs and attorneys' fees that Trane would incur in revising its summary judgment papers. *Id.*

Aero eventually filed its Amended Fourth-Party Complaint (D.E. #1620) against Trane asserting its revised position concerning the operative contract documents. As a result, the Court denied as moot Trane's motion to strike and its first motion for summary judgment. (D.E. #1625.)

At the end of this long, winding and unnecessarily traveled road through the Rule 56 process, the Court may now finally consider the merits of Trane's second summary judgment motion (D.E. #1652). But not without one more minor twist: Trane and Fidelity settled their differences, and the Court entered an order denying Trane's second summary judgment motion as moot insofar as it concerned Fidelity. (D.E. #1953.) And before Trane and Fidelity's settlement, the Court conducted the previously mentioned evidentiary hearing, and entered an order finding that (1) the UCC governed the parties' transaction; (2) Aero and Trane's contract consists of the Trane proposal dated June 18, 2001, the Aero purchase order dated June 15, 2001, the Trane proposal dated March 27, 2002, and the Aero purchase order dated April 15, 2002; (3) Trane's "Standard Terms and

3

Conditions" are a part of the parties' contract; and (4) where there is an express conflict between Trane's proposals and Aero's purchase orders, the specific conflicting term contained within Aero's purchase order governs. (D.E. #1970.) In support of that order, the Court adopted the findings of fact and conclusions of law announced at the conclusion of the evidentiary hearing. *Id.*

Trane's second summary judgment motion largely concerns whether the UCC applies to the parties' transaction and issues related to contract formation. After Trane's settlement with Fidelity and the Court's order on the evidentiary hearing, many of the issues raised in Trane's second motion for summary judgment are moot. The only remaining issue from Trane's second summary judgment motion is whether Aero's damages are limited under the parties' contract and, relatedly, whether that provision is unconscionable.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain

---

[1] As noted above, in its first motion for summary judgment, Trane sought dismissal of Aero's claims for common law indemnification and breach of implied warranty. But the Court denied Trane's first motion for summary judgment as moot, and Trane did not re-argue these issues in its second motion for summary judgment even though Aero is still asserting these claims against Trane. Given the changed circumstances affecting some of the arguments that Trane made in its first motion for summary judgment--for example, Weitz filed a Second Amended Third-Party Complaint against Aero alleging that Aero's negligent performance of its scope of work damaged other property (D.E. #1540)--and the procedural prerequisites of deciding an issue on summary judgment *sua sponte*, the Court does not consider whether Aero's claims for common law indemnification and breach of implied warranties are subject to dismissal. *See Byars v. Coca-Cola, Co.*, 517 F.3d 1256, 1264-65 (11th Cir. 2008) ("Although a court may *sua sponte* grant summary judgment on a claim not presented in a summary judgment motion, the court is required to give notice to the parties that it intends to address the claim on summary judgment.").

a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

## ANALYSIS

For the reasons stated above, to decide Trane's second motion for summary judgment, the Court need only determine whether the limitation-of-liability provision in Trane's proposals bars Aero from recovering any damages beyond the purchase price of the equipment in question under its breach of contract, common law indemnity, and breach of implied warranty claims. The provision from Trane's Standard Terms and Conditions, in pertinent part, reads as follows:

> No liability whatever shall attach to [Trane] until said products have been paid for and then said liability shall be limited to the purchase price of the equipment shown to be defective.
> . . . .
> Liability Disclaimer - In no event shall Trane be liable for any incidental or consequential damages resulting from the use, misuse, or inability to use the product. This exclusion applies regardless of whether such damages are sought based on breach of warranty, breach of contract, negligence, strict liability in tort, or any other legal theory. Should Trane nevertheless be found liable for any damages, they shall be limited to the purchase price of the equipment.

Under the UCC,[2] parties may agree to limit their damages, and courts will generally enforce

---

[2] The Court decided that the UCC governed the transaction at the evidentiary hearing. But an evidentiary hearing was not necessary to reach this conclusion. Summary judgment as to whether the UCC applies is appropriate when there is no genuine issue of material fact concerning the contract's provisions. *See BMC Indus. v. Barth Indus.*, 160 F.3d 1322, 1331 (11th Cir. 1998) ("The question whether a contract is predominantly for goods or services is generally one of fact. When there is no genuine issue of material fact concerning the contract's provisions, however, a court may determine the issue as a matter of law." (internal citation omitted)). The *BMC* court listed three factors, none dispositive on its own, that are helpful to determining whether the predominant purpose of the contract is for the sale of goods or for the provision of services. Reviewing the contract documents against these factors, the Court determines that the contract between Aero and Trane was for the sale of goods. For instance, Trane's proposals list pages of equipment and only briefly describe the services included in the contract. Aero's purchase orders, in fact, also describe

limitation-of-liability provisions.  *See* Fla. Stat. 672.719(1) (a), (3); *Amoco Oil Co. v. Gomez*, 125 F.Supp.2d 492, 511 (S.D. Fla. 2000) (holding that under Florida law parties may limit remedies contractually, "and if such provisions are made, a court may not award greater compensatory damages" and enforcing a provision in a contract that prevented recovery of "any consequential, incidental, punitive or exemplary losses or damages"); *Paul Gottlieb & Co., Inc. v. Alps S. Corp.*, 985 So. 2d 1, 8 (Fla. 2d DCA 2007) (holding that a trial court erred when it failed to enforce a limitation of consequential damages clause).

Relying on *Horowitch v. Diamond Aircraft Indus., Inc.*, 526 F.Supp.2d 1236, 1246-47 (M.D. Fla. 2007), Aero argues that the limitation-of-liability provision in Trane's proposal is unenforceable because the provision is not mutual.  But the *Horowitch* court's judgment that limitation-of-liability provisions had to be mutual was short-lived.  On a motion for reconsideration, the *Horowitch* court vacated its prior ruling and held that "[t]he mutuality of obligation requirement set forth in Florida's case law appears to apply to real estate purchase contracts which are not governed by the U.C.C. and not to contracts for the sale of goods which are so governed."  *Horowitch v. Diamond Aircraft Indus., Inc.*, No. 6:06-cv-1703-Orl-19KRS, 2009 WL 1537896, at *4 (M.D. Fla. June 2, 2009).  Accordingly, *Horowitch*, as revised, supports the notion that limitation-of-liability provisions are enforceable even if they are not mutual and limit the purchaser's potential recovery to the purchase price.  *Id.* at *5.[3]

At various points, Trane has argued that the limitation-of-liability provision is unenforceable because it is unconscionable.  Under Florida law, "before a court may hold a contract unconscionable,

---

any services that Trane was to provide as "additional included items."  Aero's purchase order also states that Trane is not to "release *equipment*" until certain conditions are met; that Aero "reserves the right to withhold money from *suppliers*;" that the "*equipment* is to be factory assembled;" and that Trane is to ensure that its "*product* conforms to the plans and specifications."  That the contracts contemplate the sale of movable goods is also underscored by the delivery terms.  For example, Trane's proposals detail that delivery is "F.O.B. Factory," and Aero's purchase orders identify a "ship to" address and details that delivery is either "F.O.B. Job site or [Aero's] shop."  Finally, the contract documents do not separate the costs of goods from services.  Without such separation, and considering that the services are listed as "additional included items," the Court is unable to conclude that the predominant purpose of the transaction was related to those services.

[3]     Aero also cites *Ocean Dunes of Hutchinson Island Dev. Corp. v. Colangelo*, 463 So. 2d 437, 439 (Fla. 4th DCA 1985), for the proposition that "[a] return of one's own money hardly constitutes damages in any meaningful sense."  But *Ocean Dunes*, also cited in the now-vacated *Horowitch* opinion, is a real estate case and is therefore inapposite.

6

it must find that it is *both* procedurally and substantively unconscionable." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003) (emphasis in original) citing *Kohl v. Bay Colony Club Condo., Inc.*, 398 So. 2d 865, 867 (Fla. 4th DCA 1981). A provision of a contract is procedurally unconscionable when the complaining party lacked "meaningful choice" about the provision in question. *Gainesville Health*, 857 So. 2d at 284. "Among the factors to be considered [while determining whether a contractual provision is procedurally unconscionable] are whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract, or whether the terms were merely presented on a 'take-it-or-leave-it' basis; and whether he or she had a reasonable opportunity to understand the terms of the contract." *Id.* To determine whether a contractual provision is substantively unconscionable, a court must examine the terms of the contract to determine whether they are "so 'outrageously unfair' as to 'shock the judicial conscience.'" *Id.* at 284-85. The overarching policy in Florida is that unconscionability is a highly disfavored defense, and courts should not employ that concept to "relieve a party of his obligations under a contract because he has made a bad bargain containing contractual terms which are unreasonable or impose an onerous hardship on him." *Id.* at 284 (citations omitted).

Some courts have described the concept of unconscionability as "chameleon-like," and noted that "neither the courts, practicing attorneys, nor contract draftsmen" can determine with certainty when it will apply. *Id.* But in this case, whether Aero can assert an unconscionability defense to invalidate Trane's limitation-of-liability clause requires far less guesswork.

First, there was no procedural unconscionability. Again, the primary question is whether Aero had a meaningful choice as to the terms of the contract. At the evidentiary hearing, the Court heard testimony that the parties negotiated and exchanged several drafts before settling on the final terms of their agreement. Further, in the UCC context, Aero had plenty of choices: to knock out the objectionable term, Aero simply had to advise Trane that it objected to the limitation-of-liability provision, or Aero could have drafted a final purchase order that included a conflicting term. *See* Fla. Stat. 672.207(1), (2) (c). In fact, as Aero touts in its summary judgment briefing, it effectively employed this option to ensure that Trane paid for certain items that were not included in Trane's proposals but were included in Aero's purchase orders. In addition, and not insignificantly, Aero always had the choice doing business with a different firm. As Morrissette notes in one of his

7

affidavits, Aero had the option of doing business with two other HVAC suppliers that had been pre-approved by the project's engineers. *See* D.E. #1538 at Exh. A, ¶ 3. Finally, the evidence presented at the evidentiary hearing showed that Aero was represented in its dealings with Trane by two college-educated, experienced industry professionals, and that Aero had a long history of doing business with Trane. Morrissette, in fact, testified that Aero had done business with Trane on at least 20-30 occasions and that he was familiar with Trane's Standard Terms and Conditions. In short, Aero was a sophisticated and experienced purchaser of HVAC products and enjoyed a long history of business dealings with Trane on projects that were similar to the one in question. In just about every respect, Aero's situation differs from that of the classic candidate for an unconscionability defense. *See, e.g., Romano v. Manor Care, Inc.*, 861 So. 2d 59, 63-64 (Fla. 4th DCA 2004) (holding that an arbitration agreement was signed in a procedurally unconscionable manner because it was included in a packet of eight documents handed to an elderly man, without any explanation as to the content and significance of the documents, as he checked his injured, elderly wife into a nursing home for rehabilitation after a fall). Accordingly, the Court finds that there was no procedural unconscionability.

The Court also finds that there was no substantive unconscionability. There is nothing inherently shocking or unfair about limitation-of-liability provision. In fact, courts frequently enforce similar provisions. The provision in question does not foreclose the possibility of any recovery for Aero, and the recovery that is ultimately available to Aero under the limitation-of-liability provision is hardly trivial. Florida courts have emphasized that "[p]eople should be able to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain." *Gainesville Health*, 857 So. 2d at 284 (citations omitted). The Court declines the invitation to re-write the parties' contract and finds that the limitation-of-liability provision is not unconscionable.

The Court has reviewed Aero's purchase order and finds that none of its terms conflicts with the limitation-of-liability provision in Trane's Standard Terms and Conditions. Therefore, under the UCC, that provision is a part of the parties' contract.

## CONCLUSION

Because limitation-of-liability provisions are enforceable under Florida law, and Aero has

not set forth a meritorious reason why the provision in question should not be enforced, the Court finds that Trane is entitled to summary judgment in its favor. Accordingly, the Court finds that Trane's exposure to Aero, under all of Aero's claims against Trane, is limited to the purchase price of the equipment at issue. Further, under the terms of Trane's limitation-of-liability provision, Trane shall not be held liable for any incidental or consequential damages.

    DONE and ORDERED in Chambers, Miami, Florida, October 9, 2009.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Judge John J. O'Sullivan
All Counsel of Record

9